[Crim. No. 1099. First Appellate District, Division Two.—June 5, 1923.]

## THE PEOPLE, Respondent, v. LOUIS WALLACH, Appellant.

[1] PARENT AND CHILD — OMISSION TO PROVIDE FOR MINOR CHILD — CONSTRUCTION OF STATUTE—CONTINUING OFFENSE.—A prosecution under section 270 of the Penal Code for willful failure, without lawful excuse, to provide for the support of a minor child is for a continuing offense, and the state is not limited in its proof to some specific time within which to prove the commission of the offense, but proof of nonsupport and of defendant's ability to provide may range over a substantial length of time.

[2] ID.—PROSECUTION UNDER SECTION 270, PENAL CODE—EFFORT TO LOCATE FAMILY — EVIDENCE — DEPOSITION OF ATTORNEY. — In a prosecution under section 270 of the Penal Code for failure to provide for the support of a minor child, where it is shown that defendant left his family with the knowledge and consent of his wife to seek a field where he could better earn a living, that the wife frequently moved from place to place without informing him of her whereabouts, although she always knew where a communication would reach him, and that he made repeated efforts to communicate with his family, it is prejudicial error to refuse defendant permission to take the deposition of his attorney to prove the contents of letters which defendant had handed to such attorney before his arrest and which had been written to his family and returned by the postal authorities for failure to find the addressee.

[3] ID.—WILLFULNESS OF ACT—EVIDENCE—CONSTRUCTION OF SECTION 270e, PENAL CODE.—In a prosecution under section 270 of the Penal Code, the state must prove not only that there was a willful failure to provide, but that there was no lawful excuse for the

62 Cal. App.—25

omission, and section 270e, which provides that omission to furnish necessaries for a child is *prima facie* evidence that such omission is willful, has no effect in providing proof that defendant's failure to provide for his child was without lawful excuse. (On denial of rehearing.)

[4] Id. — Failure to Support — Evidence — Inability to Communicate.—In a prosecution under section 270 of the Penal Code for willful failure, without lawful excuse, to provide for the support of a minor child, the deprival of defendant of the opportunity of fully presenting his defense that he endeavored to get in communication with his wife and child and had sent his wife money, was reversible error, since such evidence would tend to show that the failure to support the child was not willful, and it was for the jury to say from all the evidence whether or not that defense had been so far established as to raise a reasonable doubt as to whether or not defendant had willfully failed to provide for his child. (Opinion of supreme court on denial of hearing.)

[5] Id.—Construction of Code Phrase "Without Lawful Excuse."—Where the defense interposed to a prosecution under section 270 of the Penal Code is in effect that the failure of defendant to provide for his child is not a willful one, it is unnecessary to determine the exact meaning of the phrase "without lawful excuse" contained in such section, since it is evident that such phrase was intended to cover other cases than omissions to provide which were not willful. (Opinion of supreme court on denial of hearing.)

[6] Id.—Omission to Provide—Prima Facie Evidence of Willfulness—Construction of Code.—Where the legal obligation to support exists and the defense of the father is his inability to furnish such support, either because of his inability to communicate with his child or because of his lack of means, section 270e of the Penal Code applies and proof of the omission is *prima facie* evidence that such omission is willful. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Warren V. Tryon, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

A. D. Duncan for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

LANGDON, P. J.—The defendant appeals from a judgment of conviction of a felony, to wit, willful failure, without lawful excuse, to provide for the support of a minor child. (Sec. 270, Pen. Code.)

The indictment charges the offense as having been committed on the twenty-seventh day of June, 1914, at which date the minor was of the age of five years, and that defendant has absented himself from the state since said date.

The testimony was to the effect that at the time alleged in the indictment the defendant was working in San Francisco and receiving a salary of eighteen dollars a week and supporting his wife and children. In July, 1914, the defendant lost his position because of the destruction by fire of the place of business of the company by which he was employed. It was difficult for him to secure work in San Francisco and he sold some of his clothing and went to Los Angeles on a freight boat. This was with the consent of his wife. For a time his family secured their food upon credit at the grocery-store. Defendant testified that he sent small amounts of money to his family during the short time he remained in Los Angeles, although he was able at the time to secure work for only a few days a week. There is, however, conflict in the testimony as to the receipt of this money, but there is no testimony other than that of the defendant as to his ability to support his family during this period, and his testimony narrated facts which would establish his inability to do so. About November, 1914, defendant lost his position in Los Angeles because of a fire at his place of employment, and he returned to San Francisco to his family. At that time the family was supported by credit at the grocery-store and a small amount of money which defendant had brought with him from Los Angeles and which he stated had been borrowed. Also, at that time, Mrs. Wallach accepted aid from the Eureka Benevolent Society, an organization for the relief of needy persons of the Jewish race. Defendant was again unable to obtain employment in San Francisco, because, as he stated, it was a "dull time of year" in his business of egg candler. Accordingly, after several weeks, he borrowed some money and returned to Los Angeles, and upon being unable to find employment there, borrowed more money and went to Chicago. There he secured irregular employment for two or

three days a week, and the first ten dollars he could accumulate, over and above his actual living expenses, he sent to his family. The wife and daughter admit receiving this, which was sent about three weeks after defendant left Los Angeles. The defendant testified that he had sent a second remittance of ten dollars to his family, but this is denied by the wife. However, she did acknowledge receipt of the first remittance, and shortly thereafter, in reply to a suggestion by the defendant that he would like to return to San Francisco as he had become very ill, she wrote to him that there was nothing to do in San Francisco and suggested that, as she was being provided for, defendant remain and do the best he could in Chicago. This letter was addressed to the defendant in care of the Egg Inspectors' Union of Chicago. Mrs. Wallach never made any attempt to communicate with her husband after that letter was written, and he testified that mail would always have reached him if entrusted to the office of his union at Chicago, an address which his wife knew and to which she had previously written.

On the other hand, Mrs. Wallach moved very frequently about this time. According to her own testimony, she was living on Webster Street and O'Farrell in June, 1914, and moved from there after four months and took up her residence on Golden Gate Avenue, from where she moved to a house on Octavia Street, where she lived three months, after which time she moved to Webster Street, where she remained four months, and then moved again to Webster and Pine. She remained there about two years and then moved to Bush and Fillmore. The last letter she received from her husband was delivered to her at the Golden Gate Avenue address. Defendant testified that he wrote at frequent intervals to the Golden Gate Avenue address, the only address that he knew, and that the letters were returned to him by the postal authorities with the notation that the house was vacant or that the addressee could not be found. Defendant testified that some of these letters contained money.

The defendant worked intermittently in Chicago for three or four years, during which time he testified he was seriously ill for a part of the time and ailing most of the time, and that he incurred hospital and doctor's bills which consumed all his earnings. He testified that in August, 1916, he journeyed to Detroit, Michigan, to ask his niece to write

to his wife at the last address he' knew, thinking that perhaps the wife would reply to the niece even though she were unwilling to write to him. The envelope addressed to the wife at 857 Golden Gate Avenue, written by the niece and mailed at Detroit, Michigan, August 28, 1915, was admitted in evidence. It had been returned to the sender by the postal authorities marked "unclaimed," etc. Defendant testified that many of the other letters written to his wife which had been returned to him were handed by him before his arrest to an attorney in New York City, and he asked permission to take the deposition of said attorney to prove the contents of these letters and the notations of the postal authorities upon their envelopes. This permission was denied and its refusal is assigned by the appellant as prejudicial error and will be discussed hereinafter.

Defendant testified that in 1917 he was employed by a Chicago firm as a buyer at Dallas, Texas; that while in Texas he again wrote to his family, addressing one letter to the old address at Golden Gate Avenue and another to the United Hebrew Society, 436 O'Farrell Street. In 1918 the defendant left Chicago and obtained a position with a firm in Newark, N. J. He now ceased his efforts to locate his family. He testified that about this time, while he was earning fifty dollars a week, he was ill much of the time and did not work steadily and spent a large amount of money for doctor bills, etc. Later he went to New York City and engaged in numerous enterprises, with varying success, until finally, in September or October, 1921, we find him with a "Dairy Store" in New York City, retailing eggs, butter, fresh roasted coffee, etc., and making a profit of from $150 to $200 a week. Shortly after establishing this business (in October, 1921) defendant retained an attorney, one Fallick, and asked him to locate his family in San Francisco. It was through a communication sent by this attorney to the police department of San Francisco, which was referred by said department to the Eureka Benevolent Society, the benefactor of the family, that knowledge of the whereabouts of defendant was obtained. The Eureka Benevolent Society, through its agents in New York, made an investigation and caused the arrest and return of defendant to San Francisco under indictment.

At the time of his arrest defendant offered to send $1,000 for the transportation of his family to New York and to support them there, or to pay them a substantial amount weekly for their support in San Francisco if they desired to remain here. The Eureka Benevolent Society, which conducted the negotiations, telegraphed to its agent in New York City that defendant's family declined to go to New York and declined the offer of future support unless the defendant would either pay in cash or provide a bond to secure the future repayment of over $3,000 expended by the Eureka Benevolent Society and the city and county of San Francisco for the relief of his family during the period of defendant's absence. This the defendant was unable to do, and his prosecution followed.

[1] The defendant insisted at the trial that the prosecution be limited in its proof to some specific time within which to prove the commission of the offense, but the trial court ruled that proof of nonsupport and of defendant's ability to provide for his family might range over the entire period between the date mentioned in the indictment, to wit, June, 1914, and the date of the arrest, November, 1921. This ruling is assigned as error under the authority of *People* v. *Williams*, 133 Cal. 168 [65 Pac. 323]. In that case the defendant was tried for rape, and it was held to be error to admit evidence of many separate offenses, extending over a considerable period of time. There can be no doubt about the correctness of this ruling, but that case is clearly differentiable from the present one. A prosecution under section 270 of the Penal Code is, necessarily, for a continuing offense. Failure to provide upon one day or another day is not the evil aimed at by the statute. It is the continuing offense, the failure to provide for a substantial length of time, without legal excuse, which constitutes this offense. The instructions and ruling of the trial court that this was a continuing offense were correct. (*People* v. *Stanley*, 33 Cal. App. 624, 626 [166 Pac. 596].)

However, it seems to us that the evidence herein narrated as to the earnings and conduct of the defendant during the period in question offered a lawful excuse within the meaning of the statute. It might well be said that a devoted husband and father would have made more persistent efforts to locate his family, and failing in that would have returned

to seek them, but we cannot hold that to establish a "lawful excuse" defendant is compelled to show more than a reasonable effort to locate those dependent upon him. Some duty was upon the wife to communicate with her husband and inform him of the whereabouts of herself and her children and of their needs. That general subject was discussed in the case of *People* v. *Meads*, 28 Cal. App. 140 [151 Pac. 552], in which it was said: "When the wife and child left under the circumstances indicated, the defendant was justified in assuming that the mother intended to support and take care of the child and it was not his duty to hunt her up and tender assistance. He could well wait until informed that assistance was needed and would be accepted." True, the present case does not present the element of the departure of the wife and child from the husband, but the evidence shows that the husband left with the knowledge and consent of the wife, for a legitimate purpose, to wit, to seek a field where he could better earn a living for himself and family, and when the wife wrote to him not to return to San Francisco, and subsequently moved from place to place every few months, it was her duty to inform the defendant of her whereabouts and not to expect him to employ the services of the police department to find her in order to offer her support. The evidence also shows that during the period when the defendant knew the whereabouts of his family he was without work and ill and had no ability to support them. Such inability is a legal excuse. (*People* v. *Forester*, 29 Cal. App. 460 [155 Pac. 1022].)

[2] But quite apart from the question of whether or not the defendant has shown a legal excuse, there seems to have been no justification for the refusal to allow the defendant to secure the deposition of the attorney, Fallick, whom he had employed in New York to find his family. Defendant stated that he had given to Fallick the conclusive evidence of his numerous efforts to find his family, that is, the returned letters which he addressed to his wife from various parts of the country over a period of years, and which were sent to her last known address. Defendant was a man of little education and highly excitable, as shown by his outbursts during the trial, and he testified that when he was arrested in New York at the home of his attorney, after he had engaged his services to aid him in finding and providing

for his family, he conceived the idea that he had been deceived or betrayed by Fallick and threatened to have him disbarred. He later attempted to chastise Fallick in a public park. The entire situation revealed strained relations between Fallick and defendant, and defendant asserted that Fallick had refused to return his letters. These letters would have been most important and convincing evidence. Defendant was entitled to have them presented to the jury and he was entitled to secure their production by the only means open, which was to take the deposition of Fallick. The denial of this right is, in itself, prejudicial error and demands a reversal of the judgment.

Under the views just expressed, it is unnecessary for us to consider the point made by the defendant that under the provisions of section 196 of the Civil Code he was released from an obligation to support his minor child because of an order of the juvenile court depriving him of its custody and giving its sole custody to the mother; nor is it necessary to discuss the other assignments of error.

The judgment is reversed.

Nourse, J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 3, 1923, and the following opinion then rendered thereon:

LANGDON, P. J.—In the above-entitled matter the respondent has filed a petition for a rehearing, after decision by this court reversing the judgment against the defendant. The earnestness with which the petition is urged, as well as the important question of general public welfare involved in the facts of this case, make it desirable that some reply be made to the points urged in support of the petition for a rehearing.

[3] The opinion heretofore filed herein reviewed the facts disclosed by the evidence and stated that such facts, showing a reasonable effort by defendant over a period of several years to locate his family, without success, would seem to offer a *legal excuse* for his failure to provide for his minor child. Although the decision was not reached upon that ground, the respondent has taken issue with this

portion of the opinion and urges that section 270e of the Penal Code provides that omission to furnish necessary food, clothing, etc., for a child is *prima facie* evidence that such nonsupport or omission to furnish necessary food, etc., is willful, and this *prima facie* proof creates a conflict with the testimony of the defendant, which conflict was resolved by the jury. The section of the Penal Code under which defendant was prosecuted (section 270) provides: ''A parent of . . . a minor child who *willfully* omits, *without lawful excuse* to furnish necessary food, etc. . . . '' To say that the willfulness of the act is inferred from evidence of failure to provide does not touch the question discussed by the opinion in this case, which is that, regardless of the fact that defendant's willful failure to provide may have been shown, the evidence discloses facts which, under the decisions of this state, might constitute a lawful excuse. The prosecution must prove not only that there was a willful failure to provide, but that there was no lawful excuse for the omission. (*People* v. *Smith*, 38 Cal. App. 176 [175 Pac. 696].) This latter element is an important part of the statute. It is not the purpose of the statute to punish a father for failure to perform his duty as such, but to secure to minor children necessary food, clothing, and shelter. (*People* v. *Clarke*, 51 Cal. App. 473 [201 Pac. 465].)

It was because it appeared to us, for the reasons just stated, that section 270e of the Penal Code was not applicable to the questions presented in this case, that said section was not discussed in the opinion.

Respondent complains that many of the facts recited in the opinion are taken from the testimony of the defendant, This was because that testimony, in our opinion, stands uncontradicted in the record and must be given its full value. As we have stated, respondent urges that the *prima facie* case made by section 270e of the Penal Code is sufficient to raise a conflict with defendant's testimony and justify the verdict, but, as we have just pointed out, section 270e of the Penal Code has no effect in providing proof that defendant's failure to provide for his child was without lawful excuse and it was to this point that the defense was directed.

Respondent also asserts that a conflict exists in the evidence because of circumstances from which the jury would be justified in inferring facts contrary to the testimony in

the record. The first circumstance relied upon is that the defendant failed to provide for his family for seven years. We fail to see how this conflicts with his testimony regarding his repeated efforts to communicate with his family. It does not raise a conflict in the testimony that defendant wrote to his wife at frequent intervals for several years, sending money in some of the letters, and that these letters were addressed to her last-known address in San Francisco and were returned by the postal authorities; that a letter written by a relative to defendant's wife met the same fate; that defendant, finally, after he had succeeded in securing a regular income, engaged an attorney to locate his family; that it was through the inquiries of this attorney addressed to the police department of San Francisco that defendant was located and arrested. The other testimony relied upon by respondent to creat a conflict goes to the question of defendant's ability to support his child. We will concede that the testimony shows his ability to support his child for a large part of the time that he omitted to do so. This the defendant did not deny; his own testimony establishes it. His lawful excuse was that he had made a reasonable effort to locate his wife and had failed to do so; that she never communicated with him during the entire period of his absence, although mail would always have reached him at an address which she knew and to which she had last written; that she moved about frequently and made no arrangements for forwarding her mail or for notifying the defendant of the whereabouts of herself and her family.

Respondent urges that the jury did not believe the defendant's story of his efforts to find his family. The doubt in the minds of a jury of the only testimony in the record upon a given subject cannot furnish a conflict in that testimony. The province of the jury is to decide a case in accordance with the evidence.

Respondent points out various means by which the defendant might have located his family. It is suggested that defendant might have written the police department or public officials of the Eureka Benevolent Society, which organization he knew had assisted his family before he left San Francisco. Assuredly, he might have and should have done any and all of these things, but he stated that he did not think of them. When an attorney was employed by

defendant to locate his family, the attorney thought of one of these methods and located the family through the aid of the police department, which in turn asked the co-operation of the Eureka Benevolent Society. We think the defendant might well have done even more than the things suggested by the respondent. He might well have returned to San Francisco to search for his family. The decision in this case indicates no sympathy on the part of this court with the general conduct of the defendant toward his family, but, as stated in the opinion, the law does not exact of defendant the diligence that would be employed by the most devoted husband and father. It would be impracticable to apply such a standard in criminal prosecutions under section 270 of the Penal Code. The law can only demand of the defendant reasonable diligence in locating his family and some duty is also placed upon the wife to keep the defendant informed of her whereabouts, especially when she moves about frequently, as was done in the present case. Some duty is also upon the wife to inform the husband of the need for support for the minor child, especially in view of the circumstances of the present case, where the wife testified that she had worked during the entire time of her marriage except when she was ill or had a very young child. Under the law it was as much her duty to support the minor child as it was his duty, if she were able to do so, and we think she should be held to some duty not only to notify the defendant of her whereabouts, but to notify him of her financial needs. (*People* v. *Meads,* 28 Cal. App. 140 [151 Pac. 552].)

We are not insensible to respondent's argument that the statute under consideration should be liberally construed to effectuate its purpose and we realize the social problem involved in cases of this character and the burden placed upon the state and upon such admirable institutions as the Eureka Benevolent Society, which cared for defendant's family during several years of his absence However, we are also aware that section 270 of the Penal Code might be used as an instrument of oppression and abuse in many conceivable cases unless it be construed by the courts with a view to protecting substantial rights of defendants charged thereunder. The decisions of this state show a wise policy of protection against such possible abuses. In the case of

*People* v. *Forester,* 29 Cal. App. 462 [155 Pac. 1023], the court, in considering the section of the Penal Code we are discussing, quotes with approval the following language from another jurisdiction: ''While the law in question is salutary it nevertheless is of that character which requires it to be administered with some care so as to not produce more mischief by its enforcement in certain cases than can be prevented thereby.''

In the present case, as recited in the opinion, the defendant voluntarily engaged an attorney to locate his family and it was through the communication of this attorney to the police department in San Francisco that the Eureka Benevolent Society learned of defendant's residence in New York. It immediately telegraphed its representative in New York to investigate and upon such investigation it was learned that the defendant had a dairy store in New York and was making a profit of about $150 a week from this source. He had only been in business for a few weeks at this time and he offered to send $1,000 to San Francisco for the transportation of his family to New York and to support them either in New York or in San Francisco, as they desired. He offered to transfer his interest in his store to his wife as security for the performance of his obligations. This seems from the record to have been all he could possibly do. The Eureka Benevolent Society, however, declined this offer unless the defendant would either pay back something over $3,000 expended by it and the city and county of San Francisco in the support of his family, or give a bond to pay this amount back in installments. The defendant was unable to do this and his arrest and prosecution followed. There is no question about the defendant's moral and legal obligation to repay the money paid out for the benefit of his family, but we fail to recognize any responsibility to do so to avoid a criminal prosecution. With all due respect to the generosity and good work of the Eureka Benevolent Society, we do not think it is in the interest of public policy that the statute be stretched and distorted against the defendant so that he may be forced to repay the money which the society expended upon his family during his absence.

The foregoing lengthy discussion upon the evidence is indulged in merely in deference to the earnestness of the

petition for rehearing. It is not really vitally connected with the decision upon this appeal. The opinion suggested that the evidence probably showed a lawful excuse on the part of the defendant for failing to provide for his child, but did not place the decision upon that ground. It was held that the trial court committed prejudicial error in refusing to the defendant permission to take a deposition in New York. The facts with relation to said deposition are set out in the opinion and will not be discussed herein. The answer of the respondent in its petition for rehearing is that section 1354 of the Penal Code, under authority of which leave to take the deposition was requested, is discretionary and requires the court to be satisfied of the truth of the facts stated. It is sufficient to say that discretion thus vested is never an arbitrary discretion and that in the present case the facts appearing in defendant's affidavit were uncontradicted. The court, therefore, was not at liberty to disregard them. In the case of *People* v. *Lundquist,* 84 Cal. 26 [24 Pac. 154], the code section under consideration here was discussed. It was said: "The evidence sought to be elicited was material and important to the defense interposed by the defendant. The showing made contained all that the statute requires and the reason for not having procured the order and the evidence before was sufficient." In the present case, as we have stated, defendant's affidavit supporting his motion appears in the record uncontradicted. The evidence sought to be procured was material and very important. Respondent contends that it was cumulative. It was the most convincing evidence of the facts relied upon by defendant to constitute a lawful excuse and in its absence defendant was forced to offer exceedingly weak evidence of the same facts, and because he did offer what evidence he could on the subject should not militate against his rights when it is apparent that he has been prejudiced by the denial of the privilege of taking the deposition in New York. The defendant, having failed to obtain permission to secure the more convincing evidence of his efforts to locate his family, i. e., the letters returned to him by the postal authorities with the statement that the addressee could not be found, testified on the witness-stand to their existence. There can be no question about the fact that he was prejudiced by being forced to rely upon this

weaker evidence of so important a fact in his defense. Naturally, he could not recall the details of the letters, their dates or contents and his testimony was without much force because of these circumstances. On the other hand, the evidence of the letters themselves, with the markings of the postal authorities, would have been most convincing proof of his defense of a lawful excuse. Under these circumstances the ruling of the trial court was prejudicial error.

The petition for a rehearing is denied.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 3, 1923, and the following opinion then rendered thereon:

THE COURT.—[4] In denying the application for a transfer to this court, we deem it proper to say that we agree with the district court of appeal in reversing the judgment of the lower court because the defendant was deprived of the opportunity of fully presenting his defense, namely, that he endeavored to get in communication with his wife and child and had sent his wife money. This evidence would tend to show that the failure of the defendant to support his child was not willful, and it was for the jury to say from all the evidence whether or not that defense had been so far established as to raise a reasonable doubt as to whether or not the defendant had willfully failed to provide for his child. The opinion of the district court of appeal discusses the proper interpretation of sections 270 and 270e of the Penal Code. [5] It is not necessary to consider the proper interpretation of the phrase "without lawful excuse" contained in section 270 of the Penal Code, for the reason that the defense interposed in this case was, in effect, that the failure of the defendant to provide for his child was not a willful one. It is therefore unnecessary to determine the exact meaning of the phrase "without lawful excuse." [6] Where the legal obligation to support exists and the defense of the father is his inability to furnish such support, either because of his inability to communicate with his child or because of his lack of means, section 270e applies,

and "proof of . . . the omission to furnish necessary food, clothing, shelter or of medical attendance for a child or children is *prima facie* evidence that such omission to furnish necessary food, clothing, shelter or medical attendance is willful."

In determining the proper interpretation of section 270 it is evident that the phrase "without lawful excuse" was intended to cover other cases than omissions to provide which were not willful.

The application for transfer is denied.