[Crim. No. 492.   Fourth Dist.   May 23, 1945.]

THE PEOPLE, Respondent, v. EUGENIO CAGIGAS,
Appellant.

Edward B. Patterson for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, C. G. Halliday, District Attorney, and Don C. Bitler, Deputy District Attorney for Respondent.

MARKS, J.—This is an appeal from a judgment and an order denying a motion for a new trial in a case in which defendant was prosecuted for failing to support his minor son.

Defendant and Guillermina Fierro were married in San Luis, Sonora, Mexico, on March 19, 1939. They separated frequently, living together only intermittently. A son, Rolando Efrain, was born to Guillermina on August 27, 1943, in Los Angeles. Defendant did not contribute to the child's support although he was regularly employed in Mexicali, Mexico. Defendant denied that he was the father of the child.

The couple separated about August 18, 1942. Defendant testified that they had never lived together as husband and wife after that date. Mrs. Cagigas testified that they resumed marital relations in October, 1942, at the home of her mother in National City, California, and finally separated about February 1, 1943; that defendant was the father of the child. This evidence was corroborated by her mother.

Defendant maintains that the evidence of paternity was not sufficient to support the implied finding against him. This argument is based largely on the fact that a child was exhibited to the jury without naming or otherwise identifying it, and on the following question which was put to the mother, and her answer: "Q. Did you then have the baby, Refugio? A. I had the baby with me, yes."

We have read the record and have found no indication that defendant made any claim during the trial that the baby exhibited to the jury was not the Rolando Efrain Cagigas named in the information. The question we have quoted was put to Mrs. Cagigas by the deputy district attorney, and the use of the name "Refugio," in referring to the child, seems to have been a mistake on his part. Mrs. Cagigas' mother's first name was "Refugio," which might explain the mistake. In any event, defendant did not follow the matter up, and he made no claim in the trial court that there was any variance between the child named in the information and the name of the child of which Mrs. Cagigas claimed he was the father. The record satisfies us that but one child was born to Mrs.

Cagigas which was named Rolando Efrain Cagigas and that the jury concluded defendant was its father.

After defendant had been arrested in August, 1944, on the charge of failure to provide, he filed, in the courts of Mexicali, Mexico, an action for divorce from Mrs. Cagigas on the ground of abandonment. His petition or complaint, which bore his signature, contained the following:

"Article II. That to our union there was born a child who actually is of the age of eleven months, which can be verified in the City of Los Angeles, California, United States of America, and which is not registered in the Republic of Mexico. . . .

"Article IV. That since about six months ago my wife abandoned me, our conjugal home, establishing herself, without any justification, left my home without any justification. . . .

"3. And after you have opportunity, in case I am granted a divorce as I solicit, the loss of custody over our son. . . ."

The attorney who represented defendant in the divorce action testified that the allegations contained in Article II were necessary under Mexican law and procedure when the cause of action is based on abandonment, and that the statements in the quoted paragraph numbered "3" would permit Cagigas to deny paternity of the child at the trial of the divorce action; that abandonment must continue for six months under the Mexican law to entitle the abandoned party to a divorce.

This does not entirely explain the allegations of Article IV concerning the time of separation, and the admission there set forth may tend to corroborate the testimony of Mrs. Cagigas that she and her husband lived together after August 18, 1942.

While the evidence on the question is sharply conflicting there is substantial evidence to the effect that the couple cohabited together as husband and wife until early in 1943, which supports the implied finding of the jury on the question of the paternity of the child.

Complaint is made of alleged misconduct on the part of the trial judge in asking defendant certain questions when he was a witness in his own behalf. The questions were proper and germain to the issues being tried and showed no animus, bias or prejudice on the part of the trial judge who was entirely fair during the trial. It is within the province

of a trial judge to propound proper questions to a witness and we find no error in his doing so in this case.

■ Defendant complains of instruction number 14, given to the jury, as follows:

"You are instructed that Section 193 of the California Civil Code reads as follows:

" 'All children born in wedlock are presumed to be legitimate.'

"That means that as long as a man and woman are married any children born to the wife are supposed to be legitimate children of the husband and wife. This presumption of legitimacy can only be overcome by competent evidence on the part of the one who questions the legitimacy."

It is argued that the instruction erroneously placed on defendant the burden of proving the illegitimacy of the child. Assuming, without holding, that the instruction had that effect, any possible error was cured by instruction number 10, which unequivocally told the jury that they could not find defendant guilty unless the evidence satisfied them beyond a reasonable doubt that defendant was the father of the child. (See Pen. Code, § 270e; *People* v. *Wallach,* 62 Cal.App. 385, 398, 399 [217 P. 81]; *People* v. *Martin,* 100 Cal.App. 435 [280 P. 151].)

We find no error in the record sufficient to justify a reversal of the judgment or order.

The judgment and order are affirmed.

Barnard, P. J., and Griffin, J., concurred.