STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. HUDSON COUNTY NEWS COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MILTON MEDWIN, DEFENDANT-APPELLANT.

Argued May 8, 9, 1961—Decided June 30, 1961.

*Mr. Benjamin H. Chodash* argued the cause for the appellant Hudson County News Company (*Messrs. Krieger and Chodash,* attorneys).

*Mr. Roger H. McGlynn* argued the cause for the appellant Milton Medwin (*Messrs. McGlynn, Stein and McGlynn,* attorneys).

*Mr. Burrell Ives Humphrey,* Deputy Attorney General and *Mr. Brendan T. Byrne,* Essex County Prosecutor, argued the cause for the respondent (*Mr. David D. Furman,* Attorney General of New Jersey, attorney; *Mr. Sanford M. Jaffe,* Assistant Prosecutor, of counsel).

The opinion of the court was delivered by
JACOBS, J. On February 15, 1960 the Essex County Grand Jury returned indictments which charged that the Hudson County News Company did, without just cause, sell

and distribute certain obscene and indecent books and publications in violation of *N. J. S.* 2A:115-2, and on the same day returned an indictment which charged that Milton Medwin did, without just cause, possess with intent to utter and expose to the view of others, certain obscene and indecent books in violation of *N. J. S.* 2A:115-2. The Hudson County News Company is a wholesale distributor and Mr. Medwin is the operator of a retail store. After the State had furnished a bill of particulars, the defendants moved in the Essex County Court for dismissal of the indictments before trial. The court ruled that some of the material specified in the bill of particulars was, as a matter of law, not obscene but concluded that the indictments should proceed to trial with respect to the remaining material. It denied the motions to dismiss and the defendants appealed from the interlocutory orders pursuant to leave granted by the Appellate Division. See *R. R.* 2:2-3; *R. R.* 3:5-5(b)(6)(a). We certified the appeals on our own motion while they were pending in the Appellate Division. See *R. R.* 1:10-1(a).

■ Substantially all of the states have statutes which declare the distribution of obscene material to be criminal conduct and punishable as such. See *American Law Institute, Model Penal Code, Tentative Draft No. 6, p. 5* (1957). In our own State there has been such legislation for almost a century. See, for example, *L.* 1868, *c.* 536; *L.* 1869, *c.* 440; *L.* 1898, *c.* 235, § 53; *R. S.* 2:140-2. When the 1951 revision of the laws relating to the administration of civil and criminal justice was adopted, it provided in *N. J. S.* 2A:115-2 that anyone who, without just cause, utters or exposes to the view of another or possesses with intent to utter or expose to the view of another, or to sell, "any obscene or indecent book, pamphlet, picture or other representation" is guilty of a misdemeanor. In 1957 and again in 1959 the Legislature amended *N. J. S.* 2A:115-2 to embody express references to those who shall "sell, import, print, publish, loan, give away," etc. any obscene or indecent

material including "any mechanical or electronic recording on a record, tape, wire or other device." See *L.* 1957, *c.* 175; *L.* 1959, *c.* 97. Although the legislative draftsmanship was somewhat inartistic, it appears evident to us from the statutory terminology and history, including the introducer's statement (see *Deaney v. Linen Thread Co.,* 19 *N. J.* 578, 584 (1955)), that while these enactments were intended to clarify and expand the statute they were not at all intended to alter its basic design. Accordingly, we readily accept the construction advanced by the State and the defendant Medwin to the effect that the "without just cause" clause at the commencement of the statute modifies all of the later prohibitory provisions including those embodied in the 1957 and 1959 amendments.

Our Legislature has never attempted a definition of obscenity and while our courts have referred to the imprecise nature of the obscenity concept they have not at any time questioned that the statutory terminology in its present form is sufficient to withstand constitutional attack. See *State v. Kohler,* 40 *N. J. Super.* 600 (*App. Div.* 1956), certification denied, 22 *N. J.* 225 (1956) ; *State v. Weilershausen,* 11 *N. J. Super.* 487 (*App. Div.* 1951), certification denied, 7 *N. J.* 79 (1951) ; *cf. Adams Newark Theatre Co. v. City of Newark,* 22 *N. J.* 472, 480 (1956), affirmed 354 *U. S.* 931, 77 *S. Ct.* 1395, 1 *L. Ed. 2d* 1533 (1957) ; *Adams Theatre Co. v. Keenan,* 12 *N. J.* 267, 273 (1953) ; *McFadden's Lounge, Inc. v. Div. of Alcoholic Bev. Control,* 33 *N. J. Super.* 61 (*App. Div.* 1954) ; *Bantam Books, Inc. v. Melko,* 25 *N. J. Super.* 292, 302 (*Ch. Div.* 1953), modified 14 *N. J.* 524 (1954). In 1957 the American Law Institute submitted a proposed definition to the effect that a thing is to be considered obscene "if, considered as a whole, its predominant appeal is to prurient interest, *i. e.,* a shameful or morbid interest in nudity, sex, or excretion and if it goes substantially beyond customary limits of candor in description or representation of such matters." See *Tentative Draft No. 6, supra,* at *p.* 1, *et seq.* Shortly thereafter the

Supreme Court in *Roth v. United States* (*Alberts v. State of California*), 354 *U. S.* 476, 77 *S. Ct.* 1304, 1 *L. Ed. 2d* 1498 (1957), held that the Federal and California obscenity statutes were not, on their face, violative of the freedom of expression guarantees and definiteness requirements of the United States Constitution. See *Lockhart and McClure, Censorship of Obscenity,* 45 *Minn. L. Rev.* 5, 25 (1960). In the course of its opinion the court seemed to adopt, at least at one point, the Institute's definition. *But cf. Lockhart and McClure, supra,* at *p.* 56; *Schwartz, Criminal Obscenity Law,* 29 *Pa. Bar Assoc. Quar.* 8 (1957). In *State v. Jackson, Or.,* 356 *P. 2d* 495, 507 (1960), Justice Rossman, after discussing and rejecting other definitions of obscenity, embraced fully the one proposed by the Institute. In *People v. Richmond County News,* 9 *N. Y. 2d* 578, 216 *N. Y. S. 2d* 369, 175 *N. E. 2d* 681 (1961), Judge Fuld, after noting that the Supreme Court's opinion in *Roth,* while indicating outer limits, did not lay down any definition of obscenity which would be binding in the local interpretation of state legislation, strictly construed New York's obscenity statute as applicable "only to what may properly be termed 'hard-core pornography' "; the court examined the magazine which was the subject of the prosecution and held that, as a matter of law, it was not obscene within the meaning of New York's obscenity statute. See *Lockhart and McClure, supra,* at *pp.* 58, *et seq.*

■ Because of the grant of leave to appeal from the trial court's interlocutory orders, these proceedings are now before us on sparse records which do not even contain the material alleged by the State to be obscene. It seems to us that the preferable course would have been to have denied the leave, thus deferring appellate consideration until after trial; if the trial resulted in acquittal there would have been no occasion for review and, if conviction resulted, the appeal would have been on the basis of complete records enabling fair judicial treatment of the concrete rather than the abstract. See *United States v. International Union,* 352

*U. S.* 567, 590, 77 *S. Ct.* 529, 1 *L. Ed.* 2d 563, 577 (1957); *cf.* Brandeis, J. in *Ashwander v. Tennessee Valley Authority,* 297 *U. S.* 288, 341, 56 *S. Ct.* 466, 80 *L. Ed.* 688, 707 (1936); Frankfurter, J. in *Poe v. Ullman,* 81 *S. Ct.* 1752 (1961). The appellants have not dealt in any form with the definitions of obscenity which have been suggested in the legal writings; nor have they questioned in anywise the constitutional sufficiency under our *State Constitution* (or under the *Federal Constitution*) of a statutory provision that it shall be criminal to knowingly sell (or possess with intent to sell) obscene material. The only points which the appellants have raised before us are (1) that the New Jersey statute is unconstitutional in that it does not embody the word "knowingly" and therefore (so they argue) seeks to declare the obscenity offense without any requirement as to *scienter,* contrary to *Smith v. People of State of California,* 361 *U. S.* 147, 80 *S. Ct.* 215, 4 *L. Ed.* 2d 205 (1959) and (2) that the "without just cause" phrase in the New Jersey statute is too vague on its face and therefore violative of due process requirements within *Thornhill v. State of Alabama,* 310 *U. S.* 88, 100, 60 *S. Ct.* 736, 84 *L. Ed.* 1093, 1101 (1940) and later Supreme Court cases. See *Winters v. People of State of New York,* 333 *U. S.* 507, 515, 68 *S. Ct.* 665, 92 *L. Ed.* 840, 849 (1948); *United States v. Cardiff,* 344 *U. S.* 174, 176, 73 *S. Ct.* 189, 97 *L. Ed.* 200, 202 (1952). We shall deal with the specific points raised by the appellants but shall not discuss or pass on related issues which were neither briefed nor argued by any of the parties. See *Oliver v. Russo,* 29 *N. J.* 418, 420 (1959); *Higgins v. Krogman,* 142 *N. J. Eq.* 691, 694 (*E. & A.* 1948).

In *People v. Smith,* 161 *Cal. App.* 2d *Supp.* 860, 327 *P.* 2d 636 (1958), the California Superior Court upheld the criminal conviction of a bookseller for violation of a Los Angeles City ordinance which made it unlawful for any person to have in his possession any obscene writing or book in any place of business where books were sold or

kept for sale. In response to the contention that the ordinance was invalid in that the state legislature had preempted the field, the court noted that the state statute required *scienter* whereas no *scienter* was required under the ordinance and the bookseller could be convicted thereunder for possessing an obscene book in his store "even though it is not shown he knows its obscene character, nor that he intends its sale." 327 *P. 2d*, at *p.* 640. On appeal, the United States Supreme Court set the conviction aside. See *Smith v. People of State of California, supra,* 361 *U. S.* 147, 80 *S. Ct.* 215, 4 *L. Ed. 2d* 205. In the course of its opinion it pointed out that the requirement of *mens rea* is the rule rather than the exception in criminal jurisprudence and that, while the legislature has power in some fields, such as pure food and drug legislation, to dispense entirely with the element of knowledge, it has no comparable power in a field where the constitutional guarantees of freedom of speech and the press come into play. While it held that legislation prohibiting the distribution of obscene material may not entirely eliminate the element of *scienter,* the court declined to express an opinion as to whether the bookseller's honest but mistaken belief that the known contents of the book were not obscene would necessarily constitute a defense; it has been persuasively suggested that it would. See *Lockhart and McClure, supra,* at *pp.* 106–108; *cf. Mueller, Criminal Law and Administration,* 34 *N. Y. U. L. Rev.* 82, 88–90 (1959); *Tentative Draft No. 6, supra,* at *pp.* 49–51.

Other courts have wisely taken a course which differs from the state court's mode of literal construction in *People v. Smith, supra.* See *Morissette v. United States,* 342 *U. S.* 246, 263, 72 *S. Ct.* 240, 96 *L. Ed.* 288, 300 (1952); *People v. Finkelstein,* 9 *N. Y. 2d* 342, 214 *N. Y. S. 2d* 363, 174 *N. E. 2d* 470 (1961). In *State v. Sul,* 146 *Conn.* 78, 147 *A. 2d* 686 (1958), the defendant was convicted of violating *Section* 8567 of the *General Statutes* of Connecticut which provides, in effect, that any person who sells or possesses

with intent to sell any obscene or indecent material shall be subject to imprisonment or fine or both. On appeal, he contended that the statute was unconstitutional in that it permitted a conviction without proof of *scienter*. This contention was rejected in an opinion which pointed out that while the statute did not contain the word "knowingly" or its equivalent, it should nevertheless be construed as requiring knowledge that the material is obscene. In the course of his opinion for the court, Justice Baldwin said:

"The omission of the word 'knowingly' is not conclusive upon the question whether, to secure a conviction, the prosecution must prove that the accused knew that the materials which he possessed were obscene and indecent. Many statutes defining crimes do not contain the word 'knowingly' or its equivalent. *State v. Gaetano*, 96 *Conn.* 306, 316, 114 *A.* 82, 15 *A. L. R.* 458; see *State v. Kinkead*, 57 *Conn.* 173, 179, 17 *A.* 855; *Barnes v. State*, 19 *Conn.* 398, 404; 1 *Wharton, op. cit.*, § 17. Whether knowledge is a necessary element in proving that a prohibited act is a crime is a matter of legislative intention. *United States v. Balint*, 258 *U. S.* 250, 252, 42 *S. Ct.* 301, 66 *L. Ed.* 604. *Section* 8567 specifically requires proof of possession with intent to sell, *etc.* See *State v. Nathan*, 138 *Conn.* 485, 487, 86 *A.* 2*d* 322. Whether guilty knowledge is to be implied as an essential part of a crime when the statutory definition does not mention it must be determined from the general scope of the statute and the nature of the acts to be avoided. *State v. Gaetano, supra,* 96 *Conn.* 316, 114 *A.* 85; *State v. Nussenholtz,* 76 *Conn.* 92, 96, 55 *A.* 589; *Myers v. State*, 1 *Conn.* 502, 504.

* * * The purpose of the statute is to prevent the selling, showing or offering of obscene or indecent material falling within the description stated. It must be assumed that the legislature was aware that such material was likely to be sold, offered or shown by one who knew from its nature that it would have an appeal to prurient interest. Other statutes provide for the seizure and destruction of obscene and indecent materials regardless of who possesses them or his knowledge or intent in such possession. General Statutes §§ 8752, 8753, 8754. *Section* 8567 requires proof of intent. Intent is a mental process, and under the terms of the section it is the obvious intendment of the legislature that the word 'intent' should imply knowledge that the material is, in fact, obscene or indecent. Ordinarily intent can be proven only by circumstantial evidence. *State v. Nathan*, 138 *Conn.* 485, 488, 86 *A.* 2*d* 322. The same holds true in this instance of knowledge of the character of the material possessed. *State v. Heno*, 119 *Conn.* 29, 32, 174 *A.* 181, 94 *A. L. R.* 696; *State v. Weiner*, 84 *Conn.* 411, 417, 80 *A.* 198.

We hold that proof of knowledge that the proscribed material is obscene or indecent is requisite to a conviction under § 8567." 147 *A*. 2*d*, at *pp*. 690, 691

In *Cutter ads. State,* 36 *N. J. L.* 125 (*Sup. Ct.* 1873), the defendant was indicted under a statute which provided that where a justice of the peace received, under color of his office, a fee which was not allowed by law, he was guilty of a crime. He defended on the ground that he believed that he was legally entitled to the fee but this defense was overruled by the trial court. On appeal, the former Supreme Court reversed and rejected the State's contention that the statute should be construed literally as declaring the taking of an illegal fee to be criminal without regard to the intent of the recipient. In the course of his opinion, Chief Justice Beasley had this to say:

"In morals it is an evil mind which makes the offence, and this, as a general rule, has been at the root of criminal law. The consequence is that it is not to be intended that this principle is discarded, merely on account of the generality of statutory language. It is highly reasonable to presume that the law makers did not intend to disgrace or to punish a person who should do an act under the belief that it was lawful to do it. And it is this presumption that fully justifies the statement of Mr. Bishop, 'that a statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act.' 1 *Crim. Law,* § 80." 36 *N. J. L.*, at *p.* 126

See *State v. De Meo,* 20 *N. J.* 1, 13–14 (1955).

In *Halsted v. State,* 41 *N. J. L.* 552, 585 (*E. & A.* 1879), the court held that guilty knowledge was not to be implied as an essential element of a statutory crime relating to the expenditure of public funds in excess of appropriations. Chief Justice Beasley pointed out that in some instances such as *Cutter, supra,* the requirement of guilty knowledge was implied, whereas in others it was not and he stressed that the matter was entirely one of statutory construction. He noted that the duty of not disbursing public funds beyond appropriations was a plain one which

could readily be fulfilled and that nothing persuasive had been presented which would warrant a judicial construction narrowing the unrestricted legislative terminology. See *Morss v. Forbes,* 24 *N. J.* 341, 358 (1957); *State v. Labalo,* 7 *N. J.* 137, 149 (1951); cf. *State v. Tracy,* 29 *N. J. Super.* 145, 152 (*App. Div.* 1953), certification denied 15 *N. J.* 79 (1954); *State v. Kuehnle,* 85 *N. J. L.* 220, 225 (*E. & A.* 1913). In *Kuehnle,* Justice Swayze pointed out that while the Legislature could ordinarily make an act criminal without regard to criminal intent, the question was whether it had done so; and he noted that the strict construction in *Halsted* "turned on the fact that the duty to be performed was a simple one, not subject to very great difficulties in its performance." See 85 *N. J. L.,* at *p.* 225.

Since absolute criminal liability, such as in *Halsted,* may harshly result in the imprisonment of persons who are not morally culpable, it has understandably received criticism in academic circles. See *State v. De Meo, supra,* 20 *N. J.,* at *p.* 11; Mueller, "Mens Rea and The Law Without It," 58 *W. Va. L. Rev.* 34 (1955). The modern judicial trend is fortunately the other way. See Mueller, *supra,* 34 *N. Y. U. L. Rev.,* at *p.* 88. The obscenity statute, when viewed against the background of dealers who may have thousands of publications including many which may readily be the subject of disparate views, may hardly be considered, as was the statute in *Halsted,* as imposing a plain and simple duty which may be fulfilled without any difficulty. See *Lockhart and McClure, supra,* 45 *Minn. L. Rev.,* at *pp.* 105–108. While the extrinsic history of our obscenity statute affords little information as to whether the Legislature ever specifically discussed and passed upon the element of guilty knowledge, the terms of the statute itself give some enlightenment. Thus, unlike the ordinance in *People v. Smith, supra,* 161 *Cal. App.* 2d *Supp.* 860, 327 *P.* 2d 636, and like the statute in *State v. Sul, supra,* 146 *Conn.* 78, 147 *A.* 2d 686, our obscenity statute does not refer to persons who simply possess obscene material but refers to persons who

expose or sell or possess with intent to expose or sell such material; and it expressly confines its reference to those who do so "without just cause," language which would indicate legislative consideration of matters of knowledge and intent. See *State v. Sul, supra,* 147 *A.* 2d, at *pp.* 690–691.

 The State urges that *scienter* should be viewed as an implied element of *N. J. S.* 2A:115–2. We agree and are satisfied that the statute should now be construed as though it expressly embodied the word "knowingly." This approach is strongly reenforced by the settled doctrine that where a statute is reasonably open to such construction it should be read so as to render it constitutional. See *Woodhouse v. Woodhouse,* 17 *N. J.* 409, 416 (1955); *In re Village of Loch Arbour,* 25 *N. J.* 258, 264 (1957); *State v. Monroe,* 30 *N. J.* 160, 165 (1959); 3 *Sutherland, Statutory Construction* § 5823, *p.* 118 (*3d ed.* 1943). In *People v. Finkelstein, supra,* 9 *N. Y.* 2d 342, 214 *N. Y. S.* 2d 363, 174 *N. E.* 2d 470, the New York Court of Appeals was recently called upon to construe its obscenity statute in the light of the Supreme Court's holding in *Smith v. People of State of California, supra,* 361 *U. S.* 147, 80 *S. Ct.* 215, 4 *L. Ed.* 2d 205. The New York statute (§ 1141 of the Penal Law) provides, in part, that any person who sells, or possesses with intent to sell, any obscene book is guilty of a misdemeanor. In discussing the proper interpretation of the statute, Judge Burke had this to say:

"Although our statute might possibly be interpreted to exclude *scienter,* we feel, *inter alia,* guided by the strong constitutional presumption attending legislative enactments (*Wiggins v. Town of Somers,* 4 *N. Y.* 2d 215, 218, 173 *N. Y. S.* 2d 579, 581, 149 *N. E.* 2d 869, 871; *Lincoln Bldg. Associates v. Barr,* 1 *N. Y.* 2d 413, 415, 153 *N. Y. S.* 2d 633, 634, 135 *N. E.* 2d 801, 802) that the statute was not intended to unreasonably restrict or inhibit our inalienable 'liberty' protected by due process (see *Smith v. People of State of California, supra*). A reading of the statute as a whole clearly indicates that only those who are in some manner aware of the character of the material they attempt to distribute should be punished. It is not innocent but calculated purveyance of filth

which is exorcised, and a mere omission of the word *'scienter'* need not be construed as an attempt to eliminate that common-law element of the crime. See *Morissette v. United States*, 342 *U. S.* 246, 72 *S. Ct.* 240, 96 *L. Ed.* 288; *People v. Katz*, 290 *N. Y.* 361, 49 *N. E.* 2d 482.

In any event, the statute is at least susceptible of either interpretation, and we are, therefore, clearly obliged by statute and decisional law to embrace that which will preserve its validity. *McKinney's Cons. Laws of N. Y., Book* 1, *Statutes*, § 150; *Matter of Coates*, 9 *N. Y.* 2d 242, 213 *N. Y. S.* 2d 74, 173 *N. E.* 2d 797; *Matthews v. Matthews*, 240 *N. Y.* 28, 34–35, 147 *N. E.* 237, 238–239, 38 *A. L. R.* 1079; *Robert Dollar Co. v. Canadian Car & Foundry Co.*, 220 *N. Y.* 270, 275, 115 *N. E.* 711, 712; *Lyons v. Goldstein*, 290 *N. Y.* 19, 23, 47 *N. E.* 2d 425, 427, 146 *A. L. R.* 1422; *People ex rel. Morriale v. Branham*, 291 *N. Y.* 312, 317, 52 *N. E.* 2d 881, 882. 'No statute should be declared unconstitutional if by any reasonable construction it can be given a meaning in harmony with the fundamental law.' *People ex rel. Simpson v. Wells*, 181 *N. Y.* 252, 257, 73 *N. E.* 1025, 1026; *Kauffman & Sons Saddlery Co. v. Miller*, 298 *N. Y.* 38, 44, 80 *N. E.* 2d 322, 324. A conviction, therefore, cannot be upheld without proof of the element in question which we find required by section 1141." 174 *N. E.* 2d, at *p.* 471

See also *State v. Jackson, supra,* 356 *P. 2d,* at *pp.* 498–499.

██ We reject the appellants' first contention that the statute does not contain any requirement of *scienter* and is therefore unconstitutional and come now to the second contention that the "without just cause" phrase is too vague on its face and therefore violative of due process requirements. We, of course, recognize and give effect to the pertinent decisions which dictate that a criminal statute, particularly one which may affect constitutional freedoms, must speak with reasonable certainty and fairly inform as to the conduct being prohibited. See *Winters v. People of State of New York, supra,* 333 *U. S.,* at *pp.* 515–516, 68 *S. Ct.,* at *p.* 670, 92 *L. Ed.,* at *pp.* 849–850; *cf. Scull v. Commonwealth of Virginia,* 359 *U. S.* 344, 353, 79 *S. Ct.* 838, 3 *L. Ed.* 2d 865, 871 (1959). And while our attention has been called to the many cases in other fields and contexts where courts have given meaning to and sustained statutes embodying a phrase identical with or comparable to the "without just cause" phrase, we may readily sustain the validity of

*N. J. S.* 2A :115–2 without placing any special reliance upon those decisions. See *State v. Viering,* 187 *La.* 332, 174 *So.* 641, 642 (1937); *O'Rourke v. City of Birmingham,* 27 *Ala. App.* 133, 168 *So.* 206 (1936); *Donaghy v. State,* 6 *Boyce* 467, 29 *Del.* 467, 100 *A.* 696, 709 (1917); *Bailey v. State,* 161 *Ala.* 75, 49 *So.* 886 (1909); *cf. State v. Wohlfort,* 123 *Kan.* 62, 254 *P.* 317 (1927); *People v. Wallach,* 62 *Cal. App.* 385, 217 *P.* 81 (1923); *State v. Constable,* 90 *W. Va.* 515, 112 *S. E.* 410 (1922). See also *Berardi v. Rutter,* 42 *N. J. Super.* 39, 45 (*App. Div.* 1956), affirmed 23 *N. J.* 485, 490 (1957); and compare *State v. Kohn,* 42 *N. J. Super.* 578 (*Cty. Ct.* 1956) with *State v. Kinney Bldg. Drug Stores, Inc.,* 56 *N. J. Super.* 37 (*Cty. Ct.* 1959).

The lower court pointed out that persons, in the *bona fide* exercise of the interest in "art, science, medicine, research, study or any other lawful or proper scope or purpose," may possess obscene material with just cause. It considered the legislative phrase as expressly affording immunity in such instances; and it expressed the view that in common understanding the statutory phrase means "without legal or lawful grounds or without a fair and honest cause or reason, based on good faith." The American Law Institute has taken a somewhat comparable approach by first defining and prohibiting the distribution of obscene material and then affording an express exception in cases of the "dissemination to institutions or individuals having scientific or special justification for possessing such material." See *Tentative Draft No. 6, supra,* at *pp.* 3, 17; *cf. Lockhart and McClure, supra,* 45 *Minn. L. Rev.,* at *pp.* 68, *et seq.* In *United States v.* 31 *Photographs, etc.,* 156 *F. Supp.* 350 (*D. C. S. D. N. Y.* 1957), the Kinsey Institute sought to import hardcore pornography for scientific study. The court acknowledged that from the viewpoint of the "average person" (*Roth v. United States, supra,* 354 *U. S.,* at *p.* 489, 77 *S. Ct.,* at *p.* 1311, 1 *L. Ed.* 2d, at *p.* 1509) the material would be obscene. Nevertheless, it held that

the material being imported by the Kinsey Institute for scientific study was not obscene, although it recognized that it would be justifiable "instead of holding that the material is not obscene in the hands of the persons who will have access to it, to speak of a conditional privilege in favor of scientists and scholars, to import material which would be obscene in the hands of the average person." See 156 *F. Supp.*, at *p.* 358; *Notes,* 34 *Ind. L. J.* 426 (1959); 7 *Kan. L. Rev.* 216 (1958).

It has been suggested that in order (within *Roth*) to reach its patently sound result, the court in *United States v. 31 Photographs, etc., supra,* 156 *F. Supp.* 350, was obliged to "write an exception into the obscenity statute that the legislature did not enact." See *Lockhart and McClure, supra,* 45 *Minn. L. Rev.,* at *p.* 76. Unlike most obscenity statutes, the New Jersey statute does embody a legislatively expressed exception. In the light of its contextual purpose and common understanding we consider the exception to be reasonably certain and fairly informative; it properly protects those who may possess and distribute obscene material in the course of *bona fide* scientific, medical or comparable research or study or in the course of law enforcement activities or in other like circumstances where the nature of the possession and distribution is not related to the appeal to prurient interest. We find the terms of the exception far less troublesome than the term "obscene" itself which the appellants now concede to be sufficiently definite, under the State as well as the Federal *Constitution,* and which was given outer limit meaning and validity in *Roth* where the Supreme Court pointed out that though the statutory term is not precise, the lack of precision itself is not constitutionally offensive; that the *Constitution* does not require impossible standards; that what is required is that the statutory language convey sufficient warning when measured by common understanding; and that although there may be marginal cases where it is difficult to determine the side of the line on which a particular situation falls, that is

insufficient reason for holding the statutory language to be too ambiguous. See 354 *U. S.,* at *pp.* 491–492; 77 *S. Ct.,* at *pp.* 1312–1313, 1 *L. Ed.* 2*d,* at *pp.* 1510–1511; *cf. United States v. Petrillo,* 332 *U. S.* 1, 7, 67 *S. Ct.* 1538, 91 *L. Ed.* 1877, 1883 (1947); *Boyce Motor Lines v. United States,* 342 *U. S.* 337, 340, 72 *S. Ct.* 329, 96 *L. Ed.* 367, 371 (1952); *State v. Joas,* 34 *N. J.* 179, 185 (1961); *State v. Frankel,* 42 *N. J. Super.* 7, 11 (*App. Div.* 1956). We are satisfied that the appellants' second contention that the "without just cause" phrase is too vague on its face and therefore violative of due process requirements must fail and that the orders entered below should be and they hereby are:

Affirmed.

*For affirmance*—Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—None.