[Crim. No. 11708. In Bank. Feb. 26, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. FOLMER J. SORENSEN, Defendant and Appellant.

James C. Van Dyke and Van Dyke & Shaw for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

McCOMB, J.—Defendant appeals from a judgment convicting him of violating section 270 of the Penal Code (willful failure to provide for his minor child), a misdemeanor.

The settled statement of facts recites that seven years after defendant's marriage it was medically determined that he was sterile. His wife desired a child, either by artificial insemination or by adoption, and at first defendant refused to consent. About 15 years after the marriage defendant agreed to the artificial insemination of his wife. Husband and wife, then residents of San Joaquin County, consulted a physician in San Francisco. They signed an agreement, which is on the letterhead of the physician, requesting the physician to inseminate the wife with the sperm of a white male. The semen was to be selected by the physician, and under no circumstances, were the parties to demand the name of the donor. The agreement contains a recitation that the physician does not represent that pregnancy will occur. The physician treated Mrs. Sorensen, and she became pregnant. Defendant knew at the time he signed the consent that when his wife took the treatments she could become pregnant and that if a child was born it was to be treated as their child.

A male child was born to defendant's wife in San Joaquin County on October 14, 1960. The information for the birth certificate was given by the mother, who named defendant as the father. Defendant testified that he had not provided the information on the birth certificate and did not recall seeing it before the trial.

For about four years the family had a normal family relationship, defendant having represented to friends that he was the child's father and treated the boy as his son. In 1964, Mrs. Sorensen separated from defendant and moved to Sonoma County with the boy. At separation, Mrs. Sorensen told defendant that she wanted no support for the boy, and she consented that a divorce be granted to defendant. Defendant obtained a decree of divorce, which recites that the court retained ''jurisdiction regarding the possible support obligation of plaintiff in regard to a minor child born to defendant.''

In the summer of 1966 when Mrs. Sorensen became ill and could not work, she applied for public assistance under the Aid to Needy Children program. The County of Sonoma supplied this aid until Mrs. Sorensen was able to resume work. Defendant paid no support for the child since the separation in 1964, although demand therefor was made by the district attorney. The municipal court found defendant guilty of violating section 270 of the Penal Code and granted him probation for three years on condition that he make payments

of $50 per month for support through the district attorney's office.

From the record before us, this case could be disposed of on the ground that defendant has failed to overcome the presumption that "A child of a woman who is or has been married, born during the marriage or within 300 days after the dissolution thereof, is presumed to be a legitimate child of that marriage. This presumption may be disputed only by the people of the State of California in a criminal action brought under Section 270 of the Penal Code or by the husband or wife, or the descendant of one or both of them. In a civil action, this presumption may be rebutted only by clear and convincing proof." (Evid. Code, § 661, former Code Civ. Proc., § 1963, subd. 31.)

The only testimony as to defendant's sterility was that of defendant and his wife that it had been medically determined seven years after the marriage that defendant was sterile. In their written request to the doctor that he artificially inseminate Mrs. Sorensen, dated August 12, 1959, the Sorensens said: "We make this request since we realize that Mr. Sorensen is sterile, adequate laboratory tests having been performed. . . ." There was no medical testimony by a scientific expert in the field of male reproduction that defendant was sterile at the time of conception. However, in view of the settled statement, the only question for our determination is:

*Is the husband of a woman, who with his consent was artificially inseminated with semen of a third-party donor, guilty of the crime of failing to support a child who is the product of such insemination, in violation of section 270 of the Penal Code?*[1]

The law is that defendant is the lawful father of the child born to his wife, which child was conceived by artificial

---

[1]Section 270 of the Penal Code reads: "A father of either a legitimate or illegitimate minor child who willfully omits without lawful excuse to furnish necessary clothing, food, shelter or medical attendance or other remedial care for his child is guilty of a misdemeanor and punishable by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment. . . . This statute shall not be construed so as to relieve such father from the criminal liability defined herein for such omission merely because the mother of such child is legally entitled to the custody of such child nor because the mother of such child, or any other person, or organization, voluntarily or involuntarily furnishes such necessary food, clothing, shelter or medical attendance or other remedial care for such child, or undertakes to do so.

"Proof of abandonment or desertion of a child by such father, or the omission by such father to furnish necessary food, clothing, shelter

insemination to which he consented, and his conduct carries with it an obligation of support within the meaning of section 270 of the Penal Code.

Under the facts of this case, the term "father" as used in section 270 cannot be limited to the biologic or natural father as those terms are generally understood. The determinative factor is whether the legal relationship of father and child exists. A child conceived through heterologous artificial insemination[2] does not have a "natural father," as that term is commonly used. The anonymous donor of the sperm cannot be considered the "natural father," as he is no more responsible for the use made of his sperm than is the donor of blood or a kidney. Moreover, he could not dispute the presumption that the child is the legitimate issue of Mr. and Mrs. Sorensen, as that presumption "may be disputed only by the people of the State of California or by the husband or wife, or the descendant of one or both of them." (Evid. Code, § 661, *supra*.) With the use of frozen semen, the donor may even be dead at the time the semen is used. Since there is no "natural father," we can only look for a lawful father.

 It is doubtful that with the enactment of section 270 of the Penal Code and its amendments the Legislature considered the plight of a child conceived through artificial insemination. However, the intent of the Legislature obviously

---

or medical attendance or other remedial care for his child is prima facie evidence that such abandonment or desertion or omission to furnish necessary food, clothing, shelter or medical attendance or other remedial care is willful and without lawful excuse.

"The court, in determining the ability of the father to support his child, shall consider all income, including social insurance benefits and gifts.
" . . . . . . . . . . . .

"In the event that the father of either a legitimate or illegitimate minor child is dead or for any other reason whatsoever fails to furnish the necessary food, clothing, shelter or medical attendance or other remedial care for his minor child, the mother of said child shall become subject to the provisions of this section and be criminally liable for the support of said minor child during the period of failure on the part of the father to the same extent and in the same manner as the father.

"The provisions of this section are applicable whether the parents of such child are married or divorced, and regardless of any decree made in any divorce action relative to alimony or to the support of the child. A child conceived but not yet born is to be deemed an existing person insofar as this section is concerned."

[2]There are two types of artificial insemination in common use: (1) artificial insemination with the husband's semen, homologous insemination, commonly termed A.I.H. and (2) artificial insemination with semen of third-party donor, heterologous insemination, commonly termed A.I.D. Only the latter raises legal problems of fatherhood and legitimacy. (43 A.B.A.J. 1089, 1090.)

was to include every child, legitimate or illegitimate, born or unborn, and enforce the obligation of support against the person who could be determined to be the lawful parent.[3]

In construing section 270 of the Penal Code, the court in *In re Clarke,* 149 Cal.App.2d 802 [309 P.2d 142], said: ''Penal statutes are to be 'construed according to the fair import of their terms, with a view to effect its objects and to promote justice' (Pen. Code, § 4). . . . In determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required of them, the court must endeavor, if possible, to view the statute from the standpoint of a reasonable man who might be subject to its terms [citation]; and the requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.'' (Pp. 806-807.)

In light of these principles of statutory construction, a reasonable man who, because of his inability to procreate, actively participates and consents to his wife's artificial insemination in the hope that a child will be produced whom they will treat as their own, knows that such behavior carries with it the legal responsibilities of fatherhood and criminal responsibility for nonsupport. One who consents to the production of a child cannot create a temporary relation to be assumed and disclaimed at will, but the arrangement must be of such character as to impose an obligation of supporting those for whose existence he is directly responsible. As noted by the trial court, it is safe to assume that without defendant's active participation and consent the child would not have been procreated.

In a prosecution under section 270 of the Penal Code, paternity is an essential element of the crime of willful failure to support a minor child. (*Patterson* v. *Municipal Court,* 232 Cal.App.2d 289, 294 [8] [42 Cal.Rptr. 769].) Section 270e of the Penal Code reads: ''No other evidence shall be required to prove marriage of husband and wife, or that a person is the lawful father or mother of a child or children, than is or shall be required to prove such facts in a civil action . . . both husband and wife shall be competent to tes-

---

[3]Section 270 was enacted in 1872. Prior to 1915, liability was imposed on the parents of only legitimate children. The section was then amended to include illegitimate minors as well. In the 1925 amendment a sentence was added declaring that a child conceived but not yet born was an existing person so far as this section was concerned.

tify to any and all relevant matters, including the fact of marriage and the parentage of a child or children. . . .'' As interpreted in the *Patterson* case, section 270e ''in effect provides for a prima facie finding of paternity by such evidence as would be sufficient to determine paternity in a civil action; but, nevertheless, when a case is submitted to the jury, that body can only convict if it finds beyond a reasonable doubt that defendant is the father of the child and has failed to support it.'' (P. 299 [10].) ''[I]f a showing of paternity appears by a preponderance of the evidence the defendant need 'merely to go forward with evidence to the extent of raising a reasonable doubt that' he is the father of the child.'' (P. 301 [12].)

The documentary evidence in this case consisted of the written agreement between husband and wife that the physician inseminate the wife with the sperm of a white male, the birth certificate listing defendant as the father, and a copy of the interlocutory decree of divorce. While defendant testified that he did not know the contents of the birth certificate, this testimony was not sufficient to raise a reasonable doubt that he was the father.[4] Therefore, since the word ''father'' is construed to include a husband who, unable to accomplish his objective of creating a child by using his own semen, purchases semen from a donor and uses it to inseminate his wife to achieve his purpose, proof of paternity has been established beyond a reasonable doubt.

It is also essential to a conviction under section 270 that defendant's omission to support his child be willful. The statute provides that ''Proof of . . . the omission by such father to furnish necessary food, clothing, shelter or medical attendance or other remedial care for his child is prima facie evidence that such . . . omission . . . is willful and without lawful excuse.'' This provision does not set forth a rule relating to proof but merely declares a rule of procedure that places upon defendant the duty of going forward with evidence that his omission to provide was not willful or was excusable. (*In re Clarke, supra,* 149 Cal.App.2d 802, 807 [12].)

Defendant failed to produce any evidence that his

[4]According to an article reprinted in the American Bar Association Journal, the medical profession has formulated certain rules concerning artificial insemination where a donor is used, one of which is that the husband, not the biologic father, must be listed on the birth certificate. (*Holloway, Artificial Insemination: An Examination of the Legal Aspects* (1957) 43 A.B.A.J. 1089, 1090.)

omission to provide for his minor child was not willful. The record shows that the district attorney requested defendant to pay $50 per month child support, but that defendant did not do so. When defendant and his wife separated she declared that she wanted no support for the child. The provisions of section 270, however, ''are applicable whether the parents are married or divorced, and regardless of any decree made in any divorce action relative to alimony or to the support of the child.'' It is immaterial, therefore, that Mrs. Sorensen said that she wanted no support for the child, for she had no authority or power by agreement or release to deprive her child of the legal right to be supported by his father or to relieve defendant of the obligation imposed on him by law. (*Dixon* v. *Dixon*, 216 Cal. 440, 442 [1] [14 P.2d 497]; *People* v. *Swiggy*, 69 Cal.App. 574, 585 [10] [232 P. 174] [opinion of Supreme Court on denial of hearing].)

Rather than punishment of the neglectful parents, the principal statutory objectives are to secure support of the child and to protect the public from the burden of supporting a child who has a parent able to support him. Section 270d of the Penal Code provides that if a fine is imposed on a convicted defendant, the court shall direct its payment in whole or in part to the wife of the defendant or guardian of the child, except that if the child is receiving public assistance the fine imposed or funds collected from the defendant shall be paid to the county department either for current support of the child or as reimbursement for past support furnished from public assistance funds.

While the statute imposes liability on the father regardless of whether the child is voluntarily supported by another, and to this extent the fine imposed or payment exacted from him may be regarded in the nature of a penalty, the purpose of the statute with reference to that subject is to insure and facilitate the enforcement of that obligation where necessary. (*People* v. *Curry*, 69 Cal.App. 501, 506-507 [231 P. 358].) The defendant must have the ability to support his child, and if he is financially unable, without fault, he is lawfully excused. (*People* v. *Wallach*, 62 Cal.App. 385, 398 [6] [217 P. 81] [opinion of Supreme Court on denial of hearing].)

The question of the liability of the husband for support of a child created through artificial insemination is one of first impression in this state and has been raised in only a few cases outside the state, none of them involving a criminal prosecution for failure to provide. Although other courts con-

sidering the question have found some existing legal theory to hold the "father" responsible, results have varied on the question of legitimacy. In *Gursky* v. *Gursky* (Sup. Ct. 1963) 39 Misc.2d 1083 [242 N.Y.S.2d 406] the court held that the child was illegitimate but that the husband was liable for the child's support because consent to the insemination implied a promise to support.

In *Strnad* v. *Strnad* (Sup. Ct. 1948) 190 Misc. 786 [78 N.Y.S.2d 390], the court found that a child conceived through artificial insemination was not illegitimate and granted visitation rights to the husband in a custody proceeding.

It is less crucial to determine the status of the child than the status of defendant as the father. Categorizing the child as either legitimate or illegitimate does not resolve the issue of the legal consequences flowing from defendant's participation in the child's existence. Under our statute, both legitimate and illegitimate minors have a right to support from their parents. The primary liability is on the father, and if he is dead or for any reason whatever fails to furnish support, the mother is criminally liable therefor. To permit defendant's parental responsibilities to rest on a voluntary basis would place the entire burden of support on the child's mother, and if she is incapacitated the burden is then on society. Cost to society, of course, is not the only consideration which impels the conclusion that defendant is the lawful father of the offspring of his marriage. The child is the principal party affected, and if he has no father he is forced to bear not only the handicap of social stigma but financial deprivation as well.

The construction thus placed upon the word "father" does not distort the statutory language, and it achieves the statutory objective of providing support for the child and prevents an obvious injustice that would result were a child artificially conceived excluded from the protection of a law intended to benefit all minors, legitimate or illegitimate, born or unborn.

The public policy of this state favors legitimation (*Estate of Lund,* 26 Cal.2d 472, 481, 490 [159 P.2d 643, 162 A.L.R. 606]), and no valid public purpose is served by stigmatizing an artificially conceived child as illegitimate. An illegitimate child is one "not recognized by law as lawful offspring; . . . born of parents not married to each other; conceived in fornication or adultery" (Webster's New Internat. Dict. (3d ed. 1961) p. 1126); illegitimacy is defined as "the state or condition of one whose parents were not intermarried at the time of his birth" (Black's Law Dictionary (4th ed. 1951) p. 882);

"the status of a child born of parents not legally married at the time of birth" (1 Bouvier's Law Dictionary (8th ed. 1914) p. 1491).

In the absence of legislation prohibiting artificial insemination, the offspring of defendant's valid marriage to the child's mother was lawfully begotten and was not the product of an illicit or adulterous relationship. Adultery is defined as "the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife." (Civ. Code, § 93.) It has been suggested that the doctor and the wife commit adultery by the process of artificial insemination. (See A.B.A.J. 1089, 1091-1092, 1156.) Since the doctor may be a woman, or the husband himself may administer the insemination by a syringe, this is patently absurd; to consider it an act of adultery with the donor, who at the time of insemination may be a thousand miles away or may even be dead, is equally absurd. Nor are we persuaded that the concept of legitimacy demands that the child be the actual offspring of the husband of the mother and if semen of some other male is utilized the resulting child is illegitimate.

In California, legitimacy is a legal status that may exist despite the fact that the husband is not the natural father of the child. (See Evid. Code, § 621.) The Legislature has provided for legitimation of a child born before wedlock by the subsequent marriage of its parents (Civ. Code, § 215), for legitimation by acknowledgment by the father (Civ. Code, § 230), and for inheritance rights of illegitimates (Prob. Code, § 255), and since the subject of legitimation as well as that of succession of property is properly one for legislative action (*Estate of Lund, supra,* 26 Cal.2d 472, 483-484 [7]), we are not required in this case to do more than decide that, within the meaning of section 270 of the Penal Code, defendant is the lawful father of the child conceived through heterologous artificial insemination and born during his marriage to the child's mother.

The judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.