[No. B030507. Second Dist., Div. Six. Sept. 14, 1988.]

In re RICHARD M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RICHARD M., a Minor, etc., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to the California Rules of Court this opinion is certified for partial publication. The portion to be published follows.

**COUNSEL**

Scott T. Carss, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Carol Wendelin Pollack and John A. O'Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**—Richard M., a minor, escaped from a county youth center. He entered his father's and stepmother's locked apartment, by force and without their consent, with the intent to take food, a folding mattress and a sleeping bag. We hold here that this constitutes burglary.

An amended supplemental petition alleged Richard M. came within the jurisdiction of the juvenile court (Welf. & Inst. Code, § 602) because, among other things, he committed two counts of burglary (Pen. Code, § 459). The petition also alleged his escape from the county facility. (Welf. & Inst. Code, § 871, subd. (a).)

At one hearing, Richard admitted the escape. At a later hearing, on the amended supplemental petition, Richard stipulated he forcibly entered the apartment without consent and took items from his parents' apartment.

## FACTS

Richard lived with his natural mother in Utah until October 1986. At that time, he moved into his father's and stepmother's apartment. He lived there until April 7, 1987, at which time he was declared a ward of the court and committed to the Colston Youth Center for 180 days after admitting he committed burglary.

On June 6, 1987, Richard escaped from the youth facility and called his stepmother. She urged Richard to turn himself in to the authorities. She told him he could not stay in the apartment and that he was not welcome there. Some of Richard's possessions were stored in their garage. Richard asked if he could have his bike. She refused his request.

After seeing him in the neighborhood, his stepmother called the police, knowing he would be arrested if they located him.

On July 13, and July 15, 1987, Richard entered the locked apartment and took food, a sleeping bag and a folding mattress which belonged to his stepmother.

The court sustained the petition on the two burglary counts.

## DISCUSSION

Richard contends there is insufficient evidence to support the inference he had intent to steal upon entry. He argues he took the items in the exercise of his possessory right, because of the parental duty to furnish one's child with the necessities of life. (See Pen. Code, § 270; Welf. & Inst. Code, § 903, subd. (a); Civ. Code, §§ 196, 242.) . . . .* We find no merit to these contentions and affirm the judgment and the disposition in this matter.

▮ Burglary is the entry into a building with larcenous intent. (*People* v. *Ravenscroft* (1988) 198 Cal.App.3d 639, 642 [243 Cal.Rptr. 827].) ▮ Richard questions whether there is substantial evidence to show he had the requisite specific intent to commit theft. Penal Code section 490a provides as follows: "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall here-

---

* See footnote, *ante,* page 7.

after be read and interpreted as if the word 'theft' were substituted there-for."

Such intent is usually inferred from all the facts and circumstances revealed by the evidence; it is rarely directly provable. (*People* v. *Matson* (1974) 13 Cal.3d 35, 41 [117 Cal.Rptr. 664, 528 P.2d 752].) Richard argues his motive was only to be more comfortable, and therefore he did not intend to steal.

■ On appeal we are not concerned with whether the evidence might have supported an inference that he held another conceivable intent. (*People* v. *Earl* (1973) 29 Cal.App.3d 894, 898 [105 Cal.Rptr. 831], overruled on other grounds in *People* v. *Duran* (1976) 16 Cal.3d 282, 292 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1].) Instead, we view the evidence in the light most favorable to respondent and presume the existence of facts the trier could reasonably deduce from the evidence in support of the judgment. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) When that evidence justifies a reasonable inference of the felonious intent required, *supra,* the verdict may not be disturbed on appeal. (*People* v. *Matson, supra,* 13 Cal.3d at p. 41.)

■ Here it is stipulated that Richard forcibly entered his father's and stepmother's apartment, without consent, and took the items. He admits he intended to take these items. His stepmother told him he could not stay at the apartment and told him he should turn himself in. She refused his request to permit him to pick up any items of his, which were packed in the garage. Nonetheless, on two separate occasions he broke into the locked apartment and took items which did not belong to him. Sheriff's deputies recovered a box of nails, a hand saw, a hammer, a flashlight and a wallet in the treehouse where they found him. That he did not take such items as stereo equipment does not negate his intent to steal the items he took. ■ Personal gain is not an element of this crime. (*People* v. *Green* (1980) 27 Cal.3d 1, 57-58 [164 Cal.Rptr. 1, 609 P.2d 468], overruled on other grounds in *People* v. *Hall* (1986) 41 Cal.3d 826, 834, fn. 3 [226 Cal.Rptr. 112, 718 P.2d 99].) ■ These facts provide substantial evidence of the requisite intent to commit burglary.

### Claim of right

■ Richard asserts he had a possessory claim of right in the particular items he took because his parents had a statutory duty to provide him with the necessaries of life, such as food, clothing and shelter. (See Pen. Code, § 270; Welf. & Inst. Code, § 903, subd. (a).) He contends he lacked the felonious intent essential to the crime of burglary because he held a reason-

able belief he had such a claim of right. Proof of a bona fide belief, even if mistakenly held, that one has such a claim to property taken, negates the required element of felonious intent. (See *People* v. *Butler* (1967) 65 Cal.2d 569, 572-573 [55 Cal.Rptr. 511, 421 P.2d 703].)

Here, Richard's stepmother told him that his belongings were not within the apartment, that he could not stay there and that he was not welcome to come to the apartment. He knew he was a fugitive from his court-ordered residence at the youth center. His stepmother urged him to turn himself in. At the hearing he admitted his escape and the forcible entry without consent. The evidence does not show he had a reasonable, bona fide belief he had a right to take any items from the apartment.

His reliance on Welfare and Institutions Code sections 903, subdivision (a), and 300, subdivision (b), and Penal Code section 270, is misplaced. Statutory authority supports the proposition that parents owe their children a duty to provide them the necessities of life. (See Civ. Code, §§ 196, 242.) This duty, in the form of financial reimbursement, is not relieved while a governmental entity is supporting the child under incarceration. (Civ. Code, § 208; and see Welf. & Inst. Code, § 903, subd. (a).) The existence of this duty, however, does not support Richard's assertion that he entered the apartment without the intent to steal because he had a claim of right to the items he took.

Welfare and Institutions Code section 903, subdivision (a), specifically provides, in pertinent part, that "[a] parent of a minor . . . shall be liable for the reasonable *costs* of support of the minor while the minor is . . . committed to, any . . . place pursuant to an order of the juvenile court." (Italics added.) Section 903, subdivision (c) states that the intent of the statutes concerning support for wards of the court, such as Richard, is to "protect the fiscal integrity of the county, . . ." and to protect against the imposition of liability for excessive charges. Section 903 requires counties to specifically itemize their charges for such items as food and clothing which comprise the costs of their support of their wards. There is nothing in this statute which suggests that a parent of a fugitive, committed ward of the court has any duty to provide the actual items themselves which might support such a claim of right. Section 903 merely provides a means by which the government may obtain financial reimbursement from parents for necessities provided their child under its care, control and custody.

Richard's reliance on Welfare and Institutions Code section 300, subdivision (b), is even further afield. It states, in pertinent part: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that

person to be a dependent child of the court: . . . (b) Who is destitute, or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode . . . ." When Richard committed this crime, he was already a ward of the court under court-ordered placement which provided him the necessities of life.[1]

Penal Code section 270, read in isolation, might appear to provide some support for the "claim of right" argument. But, read in the context of the statutes with which it appears, and as it has been construed by the courts, it provides no basis to support Richard's assertion of a claim of right to the items he took.

Penal Code section 270 states, in pertinent part: "If a parent of a minor child willfully omits, without lawful excuse, to furnish necessary clothing, food, shelter . . . or other remedial care for his or her child, he or she is guilty of a misdemeanor . . . ." This section continues by stating that it "shall not be construed so as to relieve such parent from the criminal liability defined herein for such omission merely because . . . any other . . . organization . . . involuntarily furnishes such necessary food, clothing, shelter . . . or other remedial care . . . ." In addition, it says that "[p]roof of abandonment or desertion of a child . . . or the omission . . . to furnish necessary food, clothing, shelter . . . or other remedial care for his . . . child is prima facie evidence that such abandonment or desertion or omission to furnish necessary food, clothing, shelter . . . or other remedial care is willful and without lawful excuse."

The appellate court discussed the meaning of this section in *In re Clarke* (1957) 149 Cal.App.2d 802 [309 P.2d 142]. The court held that "[t]he manifest . . . purpose of this . . . legislation is to place upon the father of a minor child . . . the responsibility of providing the basic needs for the preservation of . . . life . . . ." (*Clarke, supra,* at p. 805.) The statute was later amended to include both parents.

Although Penal Code section 270 has been liberally construed to require fathers to support their unborn children (see generally *Clarke, supra*), and their lawful children born through artificial insemination (*People* v. *Sorensen* (1968) 68 Cal.2d 280, 285, 289 [66 Cal.Rptr. 7, 437 P.2d 495, 25 A.L.R.3d 1093]), we cannot say the instant "omission" to furnish Richard with these items is contemplated by or is within the meaning of this statute.

■ Courts must endeavor to view a statute from the standpoint of a reasonable person who might be subject to its terms, and to consider what

---

[1] In Richard's brief he quotes language from Welfare and Institutions Code section 300, subdivision (b), which will not be operative until next year. That language would not assist his argument, either.

evil the Legislature intended to combat. (*In re Clarke, supra,* 149 Cal.App.2d at pp. 806-807.) ■ "Penal statutes are to be 'construed according to the fair import of their terms, with a view to effect its objects and to promote justice' . . . ." (*Id.,* at p. 806.) ■ Reading Penal Code section 272, *infra,* in conjunction with section 270, shows it could not be viewed to require parents to provide necessities to their child who has escaped from court-ordered placement made pursuant to his commitment as a ward of the court. To do so would be absurd; it would promote delinquency, not justice.

Penal Code section 272 states, in pertinent part: "Every person who . . . by any act or omission . . . induces or endeavors to induce any . . . ward . . . of the juvenile court to fail or refuse to conform to a lawful order of the juvenile court, or to do or to . . . cause or manifestly tend to cause any such person to become or to remain a person within the provisions of Section[ ] . . . 602 of the Welfare and Institutions Code, is guilty of a misdemeanor . . . ." Richard knew he was a fugitive, as did his parents. Had they aided him, they might have been subject to the criminal sanctions of Penal Code section 272.

Furthermore, like Welfare and Institutions Code section 903, subdivision (a), Penal Code section 270 does not require necessaries be furnished in kind. Provided the parent adopts an appropriate method to assure the provision of necessaries to the child, such as financial support to the institution having custody of the child, the burden of these statutes is met. (*Lyons* v. *Municpal Court* (1977) 75 Cal.App.3d 829, 842-843 [142 Cal.Rptr. 449].) They had no responsibility to provide him with these items.

*Dismissal motion based on*
*possessory right in apartment*

■ Richard contends the court erred in denying his dismissal motion brought at the disposition hearing. He claims there was insufficient evidence to convict him of burglary because he had a possessory right to enter the apartment. This argument is again based on the parental obligation to provide one's children with the necessities of life.

■ The parental obligation to provide for necessaries does not imply a possessory right in the parental residence. The obligation to provide for necessaries need not be fulfilled by providing such items in kind, *supra.* Financial support is all that is required by law. No possessory right in a parental residence is implied by this duty of financial support.

■ Richard cites *People* v. *Gauze* (1975) 15 Cal.3d 709 [125 Cal.Rptr. 773, 542 P.2d 1365], in support of his assertion he has a possessory right in

his parents' abode. It is inapposite. In *Gauze,* the defendant shot his roommate. In reversing that burglary conviction, the Supreme Court held the defendant invaded no possessory right of habitation; he had an absolute right to enter the apartment. (*Gauze, supra,* at p. 714.)

In the instant case, Richard admitted he escaped from a court-ordered residence at a youth center. He stipulated in the court below that he forcibly entered his parents' apartment twice, without consent, with the intent to take the items he removed. He resided at the youth center pursuant to Welfare and Institutions Code section 850 which provides, in pertinent part: "[E]very county shall provide and maintain . . . a suitable house or place for the detention of wards . . . of the juvenile court . . . ." ▮ As the California Supreme Court has stated, even a family member, if he has moved out of the family home, commits burglary if he enters without permission with intent to steal, since he has no claim of a right to enter that residence. (*People* v. *Sears* (1965) 62 Cal.2d 737, 746 [44 Cal.Rptr. 330, 401 P.2d 938].) ▮ Because Richard did not have an unconditional possessory right of entry, the court properly found he committed burglary. (*People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649].)

We have found no California authority directly in point. The case of *In Interest of G. L.* (1979) 73 Ill.App.3d 467 [391 N.E.2d 1108], however, is instructive. It holds that a minor has no possessory right in his parents' residence. In that case, a juvenile who had committed previous burglaries and who had been remanded to the custody of a drug program, escaped and broke into his parents' home. He stole two rifles, three target pistols and $25 cash from his parents' bedroom. He was charged and convicted of burglary in a juvenile proceeding based on a burglary statute similar to our own. The sole issue in *G.L.* was whether his entry was authorized.

The parents told G.L. not to return home until he was off drugs. They had never allowed him into their bedroom. The court found the evidence sufficient to justify a finding of unauthorized entry. The court stated that by court order, as here, legal custody was no longer with his parents. (*In Interest of G. L., supra,* 391 N.E.2d at pp. 1109-1110.) He was not living at home and his parents had expressly forbidden him to enter the family home until he had stopped taking drugs.

The minor asserted, as here, that he had authority to enter the family home. The court held that although parents do have a duty to provide shelter for their minor child, that duty is reduced to a financial responsibility once legal custody has been placed outside the home. (*In Interest of G. L., supra,* 391 N.E.2d at p. 1110.)

█ Parents have a right of possession in their home superior to the right of their children in that home. (*In Interest of G. L., supra,* 391 N.E.2d at p. 1110.) "The law does not require them to submit to the adolescent tyranny of a drug addict son who seeks to enter the home for the purpose of committing a theft." (*Ibid.*) The Illinois court also distinguished the *Gauze* case, *supra,* because the minor was no longer an occupant of the household. (*Ibid.*)

. . . . . . . . . . . . . . . . . . . . . . .*

The judgment is affirmed.

Stone (S. J.), P. J., and Abbe, J., concurred.

---

*See footnote, *ante,* page 7.