Filed 11/1/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| COUNTY OF LOS ANGELES, | B292570 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BZ175229) |
| v. | |
| CHRISTOPHER W. et al., | |
| Defendants and Respondents; | |
| JENNIFER D., | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Armando Duron, Judge. Reversed.

_____

Cliff Dean Schneider for Appellant Jennifer D.

No appearance for Plaintiff and Respondent County of Los Angeles.

No appearance for Defendant and Respondent Christopher W.

No appearance for Defendant and Respondent Colin K.

_____

Christopher W. is the biological father of M.D. The mother of M.D. is Jennifer D. (Mother). Christopher and Mother never married and their personal relationship ended soon after Mother became pregnant with M.D. While Mother was pregnant, she began a dating relationship with Colin K. After M.D. was born, Colin posted pictures of himself with M.D. on his page on the Internet Website Facebook, along with messages implying that he is M.D.'s father. When M.D. was two years old, Colin moved in with Mother and M.D.

The County of Los Angeles (the County), acting through its Child Support Services Department, commenced an action against Christopher to establish his paternity and his obligation to provide child support for M.D. (Fam. Code, §§ 17400, 17404.)[1] Christopher successfully moved to join Colin as a party in the action and asserted that Colin, not he, is M.D.'s father, pursuant to section 7611, subdivision (d). The County, Mother, and Colin disagreed.

After an evidentiary hearing, the court determined that Colin is M.D.'s father, and Christopher is not. After the entry of judgment, Mother appealed. For the reasons discussed below, we reverse the judgment.

## FACTUAL BACKGROUND

Mother and Christopher had a relationship that ended in 2013. About two months later, Mother informed Christopher that she was pregnant and that he was the father. They were never married and never lived together.

In December 2013, while Mother was pregnant, Mother and Colin began dating. Mother was then living alone in a

---

[1] Unless otherwise specified, statutory references are to the Family Code.

condominium. Colin lived and worked as a supervisor in a sober living house where visitors (including Mother) were not allowed. In light of their relationship and Mother's pregnancy, some people teased Colin about becoming "a daddy."

M.D. was born in May 2014. Christopher went to the hospital on the day M.D. was born and held him briefly. While Christopher was at the hospital, he saw a sign that read "Congrats Colin & Jennifer." Mother asked Christopher if he was going to sign M.D.'s birth certificate, and he said he would not. The birth certificate does not identify anyone as M.D.'s father.

Colin spent time with Mother at the hospital before and after M.D.'s birth, and drove her and M.D. to Mother's home when they left the hospital. During the first two years of M.D.'s life, Colin visited Mother about once a week for about an hour and a half. Colin never stayed with Mother overnight during that time.

Christopher interacted with M.D. three times. The first was when he held M.D. in the hospital on the day he was born. The second time occurred in a restaurant shortly after M.D.'s birth. The third time took place in late 2014 or early 2015, when he spent about an hour with M.D. while Mother and Colin went out to dinner. Mother eventually told Christopher that she did not want him to be involved in M.D.'s life and, for that reason (according to Christopher), Christopher did not provide any financial support for M.D. or visit him.

In May 2016, when M.D. was about two years old, Colin and Mother (along with M.D.) "got a place together." Colin paid for his "own stuff," and did not support M.D. financially. Colin would hold M.D., play and watch television with him, care for him when Mother was not home, and discipline him. M.D. refers to Colin as both "Colin" and "Daddy."

Colin is not listed as M.D.'s father on M.D.'s or Mother's medical records, and he has not included him as a dependent on his

health insurance.  He accompanied Mother during M.D.'s pediatric visits, but did not represent himself to the physician as M.D.'s father.

Colin has a Facebook account.  For some period of time, he allowed his Facebook page to be viewed by anyone with a Facebook account.  After this litigation began, he limited access to his Facebook "friends."  During the time when his page was viewable by any Facebook member, Colin posted eight photographs of himself and M.D.[2]  The photographs were accompanied by statements such as:  "Me and my [M.D.]"; "I love my [M.D.], a.k.a. Turkey" (a term of endearment, according to Colin); "I can't wait to spend time with my little guy today"; "me and my boy"; "[l]ittle man on daddy's laptop"; "[m]e and my boy at the petting zoo"; "[d]inner time with my boy with [Mother]"; and " '[a]fter an hour of crying in my car,' " " '[m]y little guy' . . . 'finally fell asleep.' "  Four of the pictures are dated, and indicate that they were taken over a period between June 2014 and August 2015, before Colin began living with Mother and M.D.  The comment "[l]ittle man on daddy's laptop" was posted on Father's Day 2015.  The other pictures are undated.

Except as suggested by the photographs and comments on his Facebook page, there is no evidence in the record that Colin told anyone that he is M.D.'s father.

---

[2] The photographs, which were admitted into evidence, were not included in Mother's designation of the record and not transmitted to this court.  Our description is based on statements about them in the record.

# PROCEDURAL BACKGROUND

On April 1, 2015, the County filed a complaint regarding parental obligations against Christopher, as the defendant, and naming Mother as "other parent." (Capitalization omitted.) (§§ 17400, subd. (a), 17404, subd. (a).) The County sought a determination that Christopher and Mother are the parents of M.D., and an order that Christopher pay child support payments to the State Disbursement Unit in the amount of $1,420 per month.

On May 1, 2015, Christopher, acting in propria persona, filed an answer to the complaint in which he denied being the father of M.D., requested a genetic test to determine paternity, and asserted that "[s]omeone else [has been] stating they are [the] father from time of birth until present." (Capitalization omitted.)

In March 2017, Christopher substituted counsel in his place and filed a motion to join Colin as a party in the action on the ground that Colin is M.D.'s "presumed father" because "he has taken [M.D.] into his home and he has openly held him out as his son." No one opposed the motion. On May 23, 2017, the court granted the motion and permitted Christopher to file a petition to establish that Colin and Mother have a parental relationship with M.D.[3] Colin and Mother responded separately to the petition, and each averred that Christopher is M.D.'s father and Colin is not.

A genetic test confirmed that Christopher is M.D.'s biological father, and Christopher thereafter admitted that fact.

---

[3] Section 17404, subdivision (a) provides that "in an action under this section there shall be no joinder of actions, or coordination of actions, or cross-complaints." Although the joining of Colin in the action and Christopher's petition appear to be contrary to this statute, no one opposed Christopher's motion in the trial court and the ruling permitting Colin's joinder and Christopher's petition is not challenged on appeal.

In August 2017, the court held an evidentiary hearing where the facts that we summarized above were adduced. On November 30, 2017, the court issued a ruling and statement of decision. The court determined that Colin is a presumed father of M.D. under section 7611, subdivision (d). The court found that the eight photographs and comments Colin posted on Facebook were "dispositive," and found "persuasive" Colin's use of the possessive "my" to refer to M.D. in seven of the eight photographs and the word "daddy" in the eighth. The photographs, the court explained, "signal more than just a casual relationship compelled by the necessity of two people who happen to live in the same home." By posting them on Facebook, Colin conveyed "in what is now the public square whereby anyone, including [Christopher] could see [them]," "nothing short of a parent-child relationship nurtured by [Colin]."

Regarding Christopher, the court found that he did not meet the requirements of being a presumed father under section 7611, subdivision (d), but is a "presumed father" under section 7555, based upon the genetic test results. That presumption, the court stated, "is easily overcome by the lack of a relationship between [Christopher] and [M.D.], while at the same time an ever-closer relationship between [Colin] and [M.D.] developed." The court then determined that the presumption of parentage in Colin's favor "is founded on the weightier considerations of policy and logic," and that the genetic presumption of paternity in Christopher's favor "is easily outweighed by the relationship that [Colin] fostered and which [M.D.] has confirmed."

In June 2018, the court entered a judgment regarding parental obligations declaring that Mother and Colin are the parents of M.D., and that "pursuant to . . . section 7611, [subdivision] (d) and . . . section 7612, [subdivision] (d) [Christopher] is not the father of [M.D.]" (Capitalization omitted.)

6

The judgment does not provide for an order to anyone to pay child support.  Mother filed a timely notice of appeal.

Contrary to the California Rules of Court, Mother did not serve her notice of appeal on Colin, and the superior court clerk did not serve Colin with a notification of Mother's notice of appeal. (Cal. Rules of Court, rules 8.100(a)(1) & 8.100(e)(1).)  Nor did Mother serve her opening brief or other documents on Colin.  When these deficiencies came to our attention, we directed Mother to serve Colin with the notice of appeal and her opening brief, which Mother promptly did, and we provided Colin with an opportunity to file a brief.  (See *id.*, rule 8.100(a)(3).)  Neither Colin, Christopher, nor the County filed a brief.

### DISCUSSION

Every parent has the duty to support his or her minor children.  (§§ 3900, 4053, subd. (a); Pen. Code, § 270.)  This duty, existing at common law and codified in California since 1872 "is among the most fundamental obligations recognized by modern society." (*Moss v. Superior Court* (1998) 17 Cal.4th 396, 409–410.)  Indeed, there are "few interests of greater importance to the state than the proper discharge by parents of their duties to their children." (*Pencovic v. Pencovic* (1955) 45 Cal.2d 97, 103.)

The duty to support one's child arises prior to the child's birth (*Richter v. Superior Court* (1963) 214 Cal.App.2d 821, 823; *Kyne v. Kyne* (1940) 38 Cal.App.2d 122, 126–127; Pen. Code, § 270), and ordinarily continues regardless of whether the parent has custody of the child (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 947), the parents' marital status (*Johnson v. Calvert* (1993) 5 Cal.4th 84, 89 (*Johnson*); *Helgestad v. Vargas* (2014) 231 Cal.App.4th 719, 734), or the fact that another has voluntarily supported the child (*People v. Sorensen* (1968) 68 Cal.2d 280, 287 (*Sorensen*)).  This duty ordinarily lasts until the child completes high school or reaches the

age of 19 years (§ 3901), or the parent's parental rights are terminated (*Codorniz v. Codorniz* (1950) 34 Cal.2d 811, 817; *County of Ventura v. Gonzales* (2001) 88 Cal.App.4th 1120, 1123-1124).

A parent's duty to support his or her child is based in part on the state's interest in seeing that the child does not become a public charge (*Salas v. Cortez* (1979) 24 Cal.3d 22, 32), and the policy that those who are "directly responsible" for the child's existence should ordinarily bear the burden of support (*Sorensen, supra,* 68 Cal.2d at p. 287; *McLain v. Meadows* (1919) 44 Cal.App. 402, 403 ["[T]hose who are responsible for the child's existence [should] bear the burden of the expense that its existence necessitates."]).  Thus, a man who "freely engage[s] in an act which result[s] in the conception and birth of" a child is "held responsible for the consequences of that act."  (*Kristine M. v. David P.* (2006) 135 Cal.App.4th 783, 791 (*Kristine M.*).)[4]

Responsibility for a child's existence—and the resulting duty to support the child—is ordinarily established by proving the alleged parent's biological paternity or, in the case of assisted reproduction, the alleged parent's intent "to bring about the child's birth" and to raise the child as his or her own.  (*Johnson, supra,* 5 Cal.4th at p. 93; Miller, *Baseline, Bright-line, Best Interests: A Pragmatic Approach for California to Provide Certainty in*

---

[4] Blackstone expressed a similar view:  "The duty of parents to provide for the maintenance of their children is a principle of natural law; an obligation . . . laid on them not only by nature herself, but by their own proper act, in bringing them into the world . . . . By begetting them therefore they have entered into a voluntary obligation, to endeavour, as far as in them lies, that the life which they have bestowed shall be supported and preserved. And thus the children will have a perfect right of receiving maintenance from their parents."  (1 Blackstone, Commentaries 435, italics omitted.)

*Determining Parentage* (2003) 34 McGeorge L.Rev. 637, 688 (Miller) [genetic testing "is used almost exclusively in those cases in which a woman and child seek to enforce a support order against an alleged father"].) This case does not involve assisted reproduction.

A presumption of biological paternity can be established through genetic testing pursuant to section 7555. The version of section 7555 in effect during the proceedings below provided for a presumption of biological paternity through genetic testing that was rebuttable, but only by particular types of evidence. (Former § 7555; *County of El Dorado v. Misura* (1995) 33 Cal.App.4th 73, 83.)[5] Specifically, the presumption could have been rebutted by evidence that the genetic test was inaccurate, evidence that the alleged father was infertile or had no access to the mother when the child was conceived, or evidence that another man with such access also has a genetic "paternity index" that triggers the presumption. (*Ibid.*; accord, *City and County of San Francisco v. Givens* (2000) 85 Cal.App.4th 51, 53.)[6]

---

[5] Section 7555, as it read at the time of the trial court's decision, provided in part: "There is a rebuttable presumption, affecting the burden of proof, of paternity, if the court finds that the paternity index, as calculated by the experts qualified as examiners of genetic markers, is 100 or greater. This presumption may be rebutted by a preponderance of the evidence." (Former § 7555, subd. (a).)

[6] The Legislature recently repealed section 7555 and enacted a new section that expressly limits the type of evidence that can be used to challenge a genetic test result. (2018 Stats., ch. 876, §§ 18 & 19, pp. 5659–5660.) As of January 1, 2019, a person identified as a genetic parent of a child pursuant to the statute, "may challenge the genetic testing results only by other genetic testing satisfying the requirements of this chapter that either excludes the person as a genetic parent of the child or identifies

9

In this case, there was no evidence that Christopher was infertile or that he was not with Mother when M.D. was conceived; nor was there evidence of genetic tests showing that another man is M.D.'s father. Therefore, the presumption of Christopher's biological paternity was not rebutted. The trial court's explanation that the presumption of Christopher's biological paternity was "easily overcome by the lack of a relationship between [Christopher] and [M.D.], while at the same time an ever-closer relationship between [Colin] and [M.D.] developed" is misplaced. Neither Christopher's nor Colin's "relationship" with M.D. has any bearing on the presumption arising from genetic testing under section 7555.

The section 7555 presumption is not a conclusive presumption and therefore is not, as the trial court stated, "necessarily the end of the analysis." The presumption affects the burden of proof, and thus had the effect of shifting to Christopher the burden of proving he is not M.D.'s father for purposes of the requirement that parents support their children. (See former § 7555, subd. (a); Evid. Code, § 606.) Christopher attempted to satisfy this burden by proving that Colin was M.D.'s father based upon another presumption of parentage set forth in section 7611, subdivision (d).

Section 7611, subdivision (d) provides that a person is presumed to be the natural parent of a child if he or she "receives the child into his or her home and openly holds out the child as his or her natural child." If these requirements are met, the presumption will support a claim by one who seeks parental rights—and is willing to assume parental duties—even if the person is not the biological parent of the child (*In re Nicholas H.* (2002) 28 Cal.4th 56, 64 (*Nicholas H.*)) or is competing with a biological

another person as a possible genetic parent of the child other than the woman who gave birth to the child or the person challenging parentage." (§ 7555, subd. (b).)

10

parent for such rights (*In re Jesusa V.* (2004) 32 Cal.4th 588, 604 (*Jesusa V.*)).

Even if we assume that there is sufficient evidence to support the findings that Colin received M.D. into his home and held M.D. out as his natural child, thereby establishing the prerequisites to the presumption of parentage under section 7611, subdivision (d), that presumption is not conclusive; it may be rebutted in an appropriate action by clear and convincing evidence.  (§ 7612, subd. (a); *Nicholas H.*, *supra*, 28 Cal.4th at p. 70.)  A genetic test result establishing another person's biological paternity constitutes clear and convincing evidence that is sufficient to rebut, but does not *necessarily* rebut, the section 7611, subdivision (d) presumption. (*Jesusa V.*, *supra*, 32 Cal.4th at p. 606; *In re A.A.* (2003) 114 Cal.App.4th 771, 788; *In re Kiana A.* (2001) 93 Cal.App.4th 1109, 1118.)  Whether the evidence does rebut the presumption depends upon whether rebuttal of the presumption is "appropriate in the circumstances of the case."  (*Jesusa V.*, *supra*, at p. 606; see *In re A.A.*, *supra*, at p. 788.)

Our Supreme Court has indicated that rebutting a section 7611, subdivision (d) presumption is not appropriate when doing so "will render the child fatherless" (*Nicholas H.*, *supra*, 28 Cal.4th at p. 70), or "deprive [the child] of the support of their second parent" (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 122 (*Elisa B.*)).  Rebuttal is appropriate, however, in situations where "the legal rights and obligations of parenthood should devolve upon an unwilling candidate." (*Nicholas H.*, *supra*, 28 Cal.4th at p. 70.)

Here, Colin did not seek parental status, and rebuttal of the section 7611, subdivision (d) presumption would not render M.D. fatherless or deprive him of the support of a second parent; Christopher would be his father and obligated to support him. Moreover, there is no evidence to suggest that rebutting the

11

presumption and declaring Christopher to be M.D.'s father would adversely affect Colin's relationship with M.D. or be contrary to M.D.'s interests. Indeed, Colin and Mother—the two people who have been the most interested in M.D.'s well-being—requested that Colin not be declared M.D.'s father.[7]

As for devolving the obligations of parenthood on an unwilling candidate, there are two such candidates here: Christopher and Colin. Initially, we reject the possibility that neither alleged father should be responsible for M.D.'s support. It would be contrary to the state's interest, as well as M.D.'s interest, to allow both alleged parents to avoid responsibility for M.D.'s support. (See *In re Marriage of Buzzanca* (1998) 61 Cal.App.4th 1410, 1423 [public policy "favors, whenever possible, the establishment of legal parenthood with the concomitant responsibility"].) At least one of them must bear that burden. As between them, the issue is resolved by applying the fundamental principle that the burden of child support should be borne by those who are directly responsible for the child's existence, and the general rule that "the obligations of parenthood should not be forced upon an unwilling candidate who is not biologically related to the child" or otherwise responsible for the child's existence. (*Elisa B.*, *supra*, 37 Cal.4th at pp. 123-124,

---

[7] The decision as to who among two unwilling alleged fathers should be declared M.D.'s legal father affects not only the alleged fathers and M.D., but also Mother. The judgment, after all, establishes not only the person obligated to support M.D., but the person who will have parental rights to M.D., which Mother will have to accommodate. Her position in the matter, therefore, is highly relevant in determining whether the case is an appropriate one for rebutting the section 7611, subdivision (d) presumption. Here, Mother has consistently and vigorously contended that Christopher, not Colin, be declared M.D.'s father.

citing *Nicholas H.*, *supra*, 28 Cal.4th at p. 70; see also Miller, *supra*, 34 McGeorge L.Rev. at p. 646 [allowing "a man who has not fathered a child to avoid serving as the . . . financial father of the child . . . corresponds to the sensibilities of most people—it is unfair to require a man who is not the father of a child to raise and support the child against his will"].)[8]  The obligations of parenthood in this case, therefore, should be borne by Christopher, M.D.'s biological father, and not forced upon the unwilling Colin.

---

[8] A person who is neither biologically related to a child nor willing to support the child may nevertheless become legally obligated to support the child under the so-called "conclusive marital presumption."  (§ 7540; see Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2019) ¶ 6:4, p. 6-3.)  This presumption applies, generally, when the presumed father was married to, and cohabitating with, the mother when the child was conceived (§ 7540; *In re Marriage of Freeman* (1996) 45 Cal.App.4th 1437, 1444; *Louis v. Louis* (1970) 7 Cal.App.3d 851, 855).  Even then, however, the husband who is unwilling to support a child born to his wife may challenge his parentage with genetic tests within two years of the child's birth.  (§ 7541, subds. (a) & (b).)  This presumption does not apply here because mother was not married to anyone when Christopher and Mother conceived M.D.

Some courts have recognized a theory of parentage by estoppel, whereby one who "represents to the child . . . that he is the child's natural father and the child believes him to be the natural father" may be estopped to deny that he is the father for child support purposes.  (*Clevenger v. Clevenger* (1961) 189 Cal.App.2d 658, 674; see also *In re Marriage of Pedregon* (2003) 107 Cal.App.4th 1284, 1289.)  Arguably, this theory did not survive the 1992 enactment of the Uniform Parentage Act (§§ 7600–7730), which "provides the framework by which California courts make paternity determinations."  (*In re Emma B.* (2015) 240 Cal.App.4th 998, 1003, citing § 7610.)  Even if this theory remains viable, no one raised it below or on appeal.  Therefore, we do not consider it.

(See *Elisa B.*, *supra*, 37 Cal.4th at p. 124; cf. *County of Orange v. Leslie B.* (1993) 14 Cal.App.4th 976, 980–983; *Alicia R. v. Timothy M.* (1994) 29 Cal.App.4th 1232, 1237–1238.) The trial court erred in concluding otherwise.

The trial court based its conclusion on cases in which a person without a biological relationship to a child relied upon section 7611, subdivision (d) to obtain parental rights for himself or herself and was willing to accept the related parental responsibilities. In *In re Raphael P.* (2002) 97 Cal.App.4th 716 (*Raphael P.*), for example, the appellant, who was not a biological parent of the child in a dependency proceeding, sought presumed father status under section 7611, subdivision (d). The biological father was not involved in the case. The juvenile court denied the appellant's request because genetic tests established that he was not the biological father. (*Raphael P.*, *supra*, 97 Cal.App.4th at p. 723.) In reversing that order and holding that one can be a presumed father despite evidence he is not the biological father, the Court of Appeal relied in part on the fact that the appellant "desire[d] to accept paternal responsibility," and distinguished the case before it from cases where genetic testing is used for "confirming the financial obligations of fathers who might prefer to ignore their roles." (*Id.* at p. 736.) In contrast to *Raphael P.*, no one (other than Mother) has desired to accept parental responsibility for M.D., and genetic test results, as well as Christopher's admission of paternity, was offered for the purpose of "confirming" Christopher's "financial obligations" to his child.

Other cases the trial court relied upon similarly involved persons who affirmatively sought presumed parent status for themselves. (See *Nicholas H.*, *supra*, 28 Cal.4th at p. 63 [appellant sought to be declared the child's presumed father under section 7611, subdivision (d) in dependency case in which child's biological father did not assert an interest]; *Jesusa V.*, *supra*,

14

32 Cal.4th at p. 597 [husband of child's mother, who was not child's biological father, "promptly requested presumed father status"]; *In re L.L.* (2017) 13 Cal.App.5th 1302, 1307-1309 [mother and presumed father, who was biologically unrelated to child, challenged biological father's claim to presumed father status]; *E.C. v. J.V.* (2012) 202 Cal.App.4th 1076, 1081–1082 [former same-sex partner of child's mother sought parental rights as a presumed parent under section 7611, subdivision (d)]; *Charisma R. v. Kristina S.* (2009) 175 Cal.App.4th 361, 367 [former same-sex partner of child's mother petitioned to establish parental relationship with child; father was anonymous sperm donor]; *In re A.A., supra*, 114 Cal.App.4th at p. 788 [dependency case in which court agreed with a child's mother and a man with no biological connection to the child that that man, not the biological father, should have parental rights with respect to the child]; *In re Jerry P.* (2002) 95 Cal.App.4th 793, 797-801, review granted May 1, 2002, S104863, opn. ordered pub. June 6, 2002, review dism. as improvidently granted Aug. 28, 2002 [in dependency case in which biological father was not involved, a man with no biological connection to a child sought presumed father status]; *Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108, 1113 [man qualifying as presumed parent sued the mother and biological father of the child to be declared the child's father].) The trial court did not cite—and we have not been referred—to any decision that relieved a biological parent of the duty of child support by imposing parental status on a section 7611, subdivision (d) presumed father who did not desire that status.

Lastly, we note that the trial court's decision would create a disincentive for becoming personally and financial supportive of a child who could benefit from that relationship for fear of undertaking an unknown and long-term financial obligation. This concern was expressed in *Elisa B., supra*, 37 Cal.4th 108, where

15

the court explained that it was "careful in *Nicholas H.* [where an appellant who was not biologically related to a child sought to be a presumed parent under section 7611, subdivision (d)] not to suggest that every man who begins living with a woman when she is pregnant and continues to do so after the child is born necessarily becomes a presumed father of the child, even against his wishes. The Legislature surely did not intend to punish a man like the one in *Nicholas H.* who voluntarily provides support for a child who was conceived before he met the mother, by transforming that act of kindness into a legal obligation." (*Elisa B.*, *supra*, 37 Cal.4th at p. 124, citing *Nicholas H.*, *supra*, 28 Cal.4th 56.) By imposing parental status on Colin when he has not sought it would do precisely what the Legislature did not intend: Punish him for his acts of kindness toward M.D.

For all the foregoing reasons, we conclude that the clear and convincing evidence of Christopher's biological paternity rebutted, as a matter of law, any presumption under section 7611, subdivision (d) that Colin is M.D.'s father. Because that presumption does not apply, Christopher's only defense against the County's action fails. Accordingly, we reverse the trial court's judgment.

**DISPOSITION**

The judgment is reversed.  Mother is awarded her costs on appeal.

CERTIFIED FOR PUBLICATION.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.